**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| ABRAR OMEISH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 1:21-cv-00035-LO-IDD |
| | : | |
| SHERIFF STACEY ANN KINCAID, et. al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANT KINCAID'S MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF MOTION TO DISMISS PLAINTIFF ABRAR OMEISH'S COMPLAINT**

COMES NOW, Defendant, Sheriff Stacey Ann Kincaid, ("Sheriff Kincaid"), in her official capacity, by and through her undersigned counsel, Alexander Francuzenko, Esq., and the law firm of Cook Craig & Francuzenko, PLLC, and states the following in support of her Motion to Dismiss Plaintiff, Abrar Omeish's ("Plaintiff"), Complaint, ECF No. 1 ("Complaint"), against her:

**RELEVANT FACTUAL ALLEGATIONS**

Plaintiff was arrested on March 5, 2019 in Fairfax County by Defendant Officer Patrick of the Fairfax County Police Department. Compl. ¶¶ 2, 3, and 16. Officer Patrick brought Plaintiff to the Fairfax County Adult Detention Center ("ADC") to be processed. Compl. ¶ 43. The ADC is under the supervision of Sheriff Kincaid, and it is the facility which processes individuals who are arrested in Fairfax County. Compl. ¶ 15. Plaintiff was in the custody of Officer Patrick while being processed at the ADC and was thereafter immediately released. Compl. ¶¶ 43-57.

While being processed at the ADC, Plaintiff contends that she was required to remove her hijab in order to take her booking photographs.  Compl. ¶ 45.  Plaintiff states that she "explained the significance of her religious head covering and how removing it publicly would violate her faith" and that she "began to sob and insisted that she be processed in a private place and by a female officer."  Compl. ¶¶ 46 and 48.  A female deputy was provided by ADC, but Plaintiff still stated that "she could not remove her hijab and asked to keep it on."  Compl. ¶ 49.  Plaintiff contends that the female deputy "ordered her to remove her hijab, explaining that if she did not remove it, it would be removed against her will."  Compl. ¶ 50.  Plaintiff then claims that Plaintiff removed her hijab and was photographed while "she could see male detainees and male officers make eye contact her (sic)."  Compl. ¶ 51.

Plaintiff asserts that the photographs taken of her were uploaded in accordance with the policies and practices of Virginia State Police ("VSP") to "the Central Criminal Image System ("CCIS") owned and operated by the Virginia State Policy (sic)."  Compl. ¶ 54.  Plaintiff states that

> [t]he reason Defendant Kincaid photographed Ms. Omeish without hijab is because VSP has established requirements regarding all images of arrestees that local law enforcement agencies in Virginia take and upload to CCIS… However, though Virginia law does not mandate it, VSP has a practice and custom of requiring law enforcement agencies in Virginia to photograph arrestees without any head coverings, even when individuals are wearing such coverings for religious purposes.

Compl. ¶ 56.  Plaintiff claims that Sheriff Kincaid's attendance to the VSP policies violated her rights.

## STANDARD OF REVIEW

A motion to dismiss is appropriate when a complaint fails to state a cause of action upon which relief can be granted.  Fed R. Civ. P. 12(b)(6).  Complaints are dismissed when they fail to

assert a legal theory that is recognized by the law or to allege sufficient facts to support a cognizable legal theory.  See Smile Care Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996).  All allegations and favorable inferences that can be drawn from those allegations must be viewed in a light most favorable to the non-moving party.  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The United States Supreme Court initially elucidated a plausibility pleading standard in Bell Atl. Corp. v. Twombly stating that a complaint must contain sufficient factual matter that if accepted as true, would "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (1955).  Later, in Ashcroft v. Iqbal, the Supreme Court reaffirmed its stance on the plausibility standard, holding that it requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully," and instead requires a plaintiff to articulate facts that, if true, show that the plaintiff has stated a claim entitling him to relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Twombly, 550 U.S. at 557).

"The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a Defendant has acted unlawfully… Where a Complaint pleads facts that are 'merely consistent with' a Defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Iqbal, 556 U.S. at 678, (quoting Twombly, 550 U.S. at 557).  The plausibility standard requires that a complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Twombly, 550 U.S. at 555).

## ARGUMENT

The Complaint asserts First and Fourth Amendment claims in Counts II and III, respectively, under 42 U.S.C. § 1983, as well as a claim in Count I under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA") against Sheriff Kincaid in her official capacity.  Under the appropriate legal standards, Plaintiff fails to support her claims with sufficient factual allegations, and therefore the claims against Sheriff Kincaid must be dismissed.

### I. Sheriff Kincaid, in her official capacity, enjoys Eleventh Amendment Immunity as to the Complaint's § 1983 claims for monetary damages.

"Although state officials literally are persons, an official-capacity suit against a state officer is not a suit against the official but rather is a suit against the official's office."  Hafer v. Melo, 502 U.S. 21, 26 (1991).  "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."  Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464 (1945), overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, (2002).  "[T]he distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device."  Hafer, 502 at 27 (internal citations omitted).  Therefore, when suing state officials for monetary relief in their official capacities, it "is no different from a suit against the State itself."  Id.

"In Virginia, sheriffs are state officials… whose positions are constitutionally created…" McCoy v. Chesapeake Corr. Ctr., 788 F. Supp. 890, 893 (E.D. Va. 1992); Va. Code Ann. § 15.2.1609; Va. Const. Art. 7, § 4.  Accordingly, a suit against a sheriff in the Commonwealth of Virginia in his or her official capacity—or a sheriff's office—is equivalent to a suit against the state and not a "person" under § 1983.   See Will v. Mich. Dept. of State Police, 491 U.S. 58, 71

4

(1989) (dismissing official capacity claim against a Sheriff because neither the state nor its officials acting in their official capacities are "persons" under § 1983); <u>Doud v. Virginia</u>, 282 Va. 317, 321 (2011) (In Virginia, a county sheriff "is an independent public official whose authority is derived from the Constitution of Virginia" (quoting <u>Carraway v. Hill</u>, 265 Va. 20, 24 (2003)).

Thus, Sheriff Kincaid, in her official capacity, is equivalent to Virginia and enjoys sovereign immunity under the Eleventh Amendment.  Furthermore, RLUIPA's "appropriate relief against a government" language has been held to preclude monetary relief by the Fourth Circuit.  <u>Madison v. Virginia</u>, 474 F.3d 118, 131 (4th Cir. 2006).  Therefore, Plaintiff's claims for monetary damages against Sheriff Kincaid, in her official capacity, are barred by the Eleventh Amendment or RLUIPA's language and must be dismissed.

## II.     **Sheriff Kincaid, in her official capacity, enjoys Eleventh Amendment Immunity as to the Complaint's § 1983 claims for retrospective injunctive relief.**

"[F]ederal courts may, [however], exercise jurisdiction over claims against state officials by persons at risk of or suffering from violations by those officials of federally protected rights, if (1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective."  <u>Republic of Paraguay v. Allen</u>, 134 F.3d 622, 627 (4th Cir. 1998).  Therefore, "a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law."  <u>Id.</u>  (quoting <u>Quern v. Jordan</u>, 440 U.S. 332, 337 (1979)).  Importantly, "the exception does not permit federal courts to entertain claims seeking retrospective relief, either compensatory or other, for completed, not presently ongoing violations of federally-protected rights."  <u>Id.</u>  This means that Plaintiff's prayers for injunctive relief which are retrospective, such as her demand that Sheriff Kincaid destroy and instruct other persons or agencies to destroy her booking photographs, Compl. ¶ 90 B, and C, are also subject to Eleventh Amendment immunity.  <u>Id.</u>  Since the alleged violations under § 1983 and RLUIPA

are not ongoing or continuing violations of federal law, claims for retrospective injunctive relief must be dismissed.  Id.

**III.**   **Plaintiff's prayed for injunctive relief is inappropriate.**

Plaintiff asks that injunctions be granted "ordering Fairfax County Police Department to implement a policy change prohibiting Defendants from taking booking photographs of Muslim women without their hijab;" "ordering Defendant to destroy Plaintiff's booking photographs taken with her hijab;"[1] and "ordering Defendants to take every step, including, but not limited to, instructing other persons or agencies given access to Plaintiff's booking photographs to destroy all copies of Plaintiff's booking photographs."  Compl. ¶ 90 A, B, and C.

**A.   Sheriff Kincaid has no authority over Virginia State Police policies.**

Plaintiff's request for injunctive relief in the form of requiring Sheriff Kincaid to somehow compel the "Fairfax County Police Department to implement a policy change prohibiting Defendants from taking booking photographs of Muslim women without their hijab," is inappropriate.  Compl. ¶ 90, A.  Plaintiff states: "The reason Defendant Kincaid photographed Ms. Omeish without hijab is because VSP has established requirements regarding all images of arrestees that local law enforcement agencies in Virginia take and upload to CCIS… VSP has a practice and custom of requiring law enforcement agencies in Virginia to photograph arrestees without any head coverings, even when individuals are wearing such coverings for religious purposes." Compl. ¶ 56.   To expect Sheriff Kincaid to change a policy which Plaintiff admits is required by VSP, is unreasonable, as she has no authority over VSP or its policies. Va. Code § 15.2-1609 (sheriffs are not granted power over VSP); see also Va. Code § 52-26 (Instead, "[t]he

---

[1] Plaintiff requests an injunction requiring Sheriff Kincaid destroy her booking photographs taken with her hijab.  To the extent that Plaintiff meant to ask for an injunction requiring both photographs with and without her hijab to be destroyed, the same arguments apply.

Superintendent [of the state police] is authorized to maintain liaison and to cooperate with law-enforcement and criminal justice agencies of all counties, cities and towns and all other agencies, departments, and institutions of the Commonwealth, other states and of the United States in order to develop and carry on a comprehensive uniform crime reporting program for the Commonwealth.")  Therefore, Complaint paragraph 90 A is untenable and must be dismissed.

### B.  <u>Plaintiff lacks standing to obtain an injunction requiring a policy change.</u>

Furthermore, Plaintiff does not have standing to seek a prospective injunction changing the photograph policy for arrestees, and therefore, this Court does not have jurisdiction.  The Supreme Court of the United States has stated:

> It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy… Plaintiffs must demonstrate a personal stake in the outcome in order to assure that concrete adverseness which sharpens the presentation of issues necessary for the proper resolution of constitutional questions. Abstract injury is not enough.  The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical.

<u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 101 (1983) (internal quotations and citations omitted).

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." <u>O'Shea v. Littleton</u>, 414 U.S. 488, 495-96 (1974).  "To establish standing for prospective relief, a plaintiff must show, inter alia, a sufficient likelihood that he or she will again be wronged in a similar way."  <u>See</u> <u>J.H. v. Bratton</u>, 248 F. Supp. 3d 401, 408 (E.D.N.Y. 2017) (internal citations omitted).  Because Plaintiff would have to break the law in Fairfax County and be arrested again before she would come in contact with the process she seeks to enjoin on her behalf, the threat of

prospective injury is too remote.  O'Shea, 414 U.S. at 495-96.  Courts typically assume that Plaintiffs will not violate the law in order to find standing in these types of cases.  City of Los Angeles, 461 U.S. 95; O'Shea, 414 U.S. 488; see also J.H., 248 F. Supp. 3d at 408.  Therefore, Plaintiff lacks standing to have prospective injunctive relief be granted and as such, her claims praying for such relief should be dismissed.

### C.  Plaintiff has not alleged the necessary prerequisites to obtain injunctive relief.

Plaintiff requests mandatory injunctive relief, which commands or requires a party perform a positive act.  "Whereas mandatory injunctions alter the status quo, prohibitory injunctions aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending. We have defined the status quo for this purpose to be the last uncontested status between the parties which preceded the controversy."  League of Women Voters of N. Carolina v. N. Carolina, 769 F.3d 224, 236 (4th Cir. 2014) (internal quotation marks and citation omitted). "The Fourth Circuit has viewed mandatory relief with caution, explaining that it 'should be granted only in those circumstances when the exigencies of the situation demand such relief.'" Calvary Christian Ctr. v. City of Fredericksburg, 800 F. Supp. 2d 760, 765 (E.D. Va. 2011) (citing In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir.2003)).  The burden with which Plaintiff hopes to saddle Sheriff Kincaid is a significant hardship, a mandatory injunction, which includes requiring Sheriff Kincaid to alter the status quo by attempting to change and control other agencies' practices and policies.  It is through this lens that the Plaintiff's requested mandatory injunctive relief as pled should be viewed.

"[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for

that injury; 3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." <u>Monsanto Co. v. Geertson Seed Farms</u>, 561 U.S. 139, 156–57 (2010) (citing <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006)). "An injunction should issue only if the traditional four-factor test is satisfied." <u>Id.</u>

 Plaintiff has not alleged that remedies available at law are inadequate to compensate her for her alleged injury. Similarly, she has not asserted facts that could show that when balancing the hardship between Plaintiff and Sheriff Kincaid that such a balance would tip in favor of Plaintiff. Plaintiff has not pled any facts to show that her interests in the destruction of her booking photographs and the change in the policy at issue which no longer has any effect on Plaintiff outweighs Sheriff Kincaid's interests in following VSP policy and processing arrestees in a way that facilities their accurate identification.

 Furthermore, and more importantly, the public interest would be greatly disserved by hampering the ability of law enforcement to identify criminals by maintaining accurate photographs of arrestees. <u>See</u> <u>Maryland v. King</u>, 569 U.S. 435, 458 (2013) (discussing the legitimate interest of government in knowing the identity of an arrestee, including photographing arrestees to aid in recapture of escapees, to aid in investigation of past records and personal histories, and to preserve the means of identification for future supervision). Each of Plaintiff's requested injunctions greatly disserves the public interest in identifying arrestees. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305, 312 (1982). Therefore, Plaintiff has not and cannot allege sufficient facts to overcome the hurdles standing between her and mandatory permanent injunctive relief.

Similarly, to obtain a preliminary injunction, a plaintiff must establish "that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the plaintiff's favor; and (4) an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008). As explained above, Plaintiff has not pled sufficient facts to show that she is likely to succeed on the merits. Nor has she (nor can she) allege that the balance of equities tip in her favor, as they instead tip decidedly in favor of Sheriff Kincaid. Finally, she has not and cannot plead sufficient facts to show that such injunctive relief is in the public interest. Also, with respect to pleading 'irreparable injury,' this requirement "cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) (citing O'Shea v. Littleton, 414 U.S. 488, (1974)). Absent Plaintiff being arrested again, she is unable to plead a likelihood of substantial and immediate irreparable injury.

Furthermore, because mandatory injunctions are viewed with more skepticism, "a mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir.1980). Granting the injunctive relief prayed for does nothing to preserve the court's ability to enter ultimate relief on the merits of the same kind, as the situation is not deteriorating; it is unchanging and static as it stands. For the foregoing reasons, Plaintiff has not pled the necessary prerequisite facts for a mandatory preliminary or permanent injunction to be granted and the court should therefore deny the Plaintiff injunctive relief.

**IV.**   **Plaintiff fails to allege sufficient facts to state a RLUIPA claim against Sheriff**
     **Kincaid in Count I.**

In the event that the court deems injunctive relief proper, Plaintiff has failed to plead

sufficient facts to assert a claim under RLUIPA.  Plaintiff asserts that her rights under RLUIPA

were violated when she was required to remove her hijab for her booking photographs.  RLUIPA

states that "[n]o government shall impose a substantial burden on the religious exercise of a

person residing in or confined to an institution, as defined in section 1997 of this title, even if the

burden results from a rule of general applicability, unless the government demonstrates that

imposition of the burden on that person—(1) is in furtherance of a compelling governmental

interest; and (2) is the least restrictive means of furthering that compelling governmental

interest."  42 U.S.C.A. § 2000cc-1(a).

RLUPIA applies to those confined in or residing in an institution.  What constitutes an

institution, as Plaintiff points out, is readily defined by 42 U.S.C. § 1997 to include "a jail,

prison, or other correctional facility… [and] a pretrial detention facility."  Plaintiff fails to allege

sufficient facts to show, however, that she was ever confined to or residing in the ADC, instead

she makes the conclusory statement that she was "confined to an institution when the events

transpired." Compl. ¶ 62.  Plaintiff does not state that she was ever remanded to the custody of

ADC, in fact, the facts as pled support the conclusion that she remained in the custody of the

arresting officer, Officer Patrick, the entire time she was in the ADC until she was released.  The

ADC was only ever responsible for helping to process Plaintiff.  Because Plaintiff has not and

cannot allege that she was confined to or residing in the ADC, RLUIPA does not apply, and the

RLUIPA claim against Sheriff Kincaid must be dismissed.

Alternatively, Plaintiff's statement that the arrestee photographs "do not further a

compelling government interest in identifying arrestees," is similarly conclusory and merely

parrots the necessary statutory language of RLUIPA, rather than tracking the available precedent on the issue.  The Supreme Court has held, in fact, that identifying prisoners is a compelling government interest.  Holt v. Hobbs, 574 U.S. 352, 365–66, (2015).  In Holt, a RLUIPA case about prisoners' ability to grow beards, the Supreme Court stated, "We agree that prisons have a compelling interest in the quick and reliable identification of prisoners, and we acknowledge that any alteration in a prisoner's appearance, such as by shaving a beard, might, in the absence of effective countermeasures, have at least some effect on the ability of guards or others to make a quick identification."  Id.  Interestingly in Holt, the Supreme Court suggested a "dual-photo method" of photographing prisoners with and without their religious beards as the least restrictive means of furthering their compelling government interest in quickly and reliably identifying prisoners.  Id.

In evaluating whether the policy is the least restrictive means of furthering the compelling government interest, "courts must give due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Estes v. Virginia Dep't of Corr., No. 7:18-CV-602, 2020 WL 1472219, at *3 (W.D. Va. Mar. 26, 2020) (internal citations omitted).  "Of these enumerated concerns, security deserves particular sensitivity… RLUIPA, in other words, is not meant to elevate accommodation of religious observances over an institution's need to maintain order and safety."  Lovelace v. Lee, 472 F.3d 174, 190 (4th Cir. 2006) (referencing Cutter v. Wilkinson, 544 U.S. 709, 722 (2005)).  On this, the Supreme Court of the United States has reasoned:

> Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. See, e.g., 139 Cong. Rec. 26190 (1993) (remarks of Sen. Hatch). They anticipated that courts would apply the Act's standard with "due deference to the experience and expertise of prison and jail

administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Joint Statement 16699 (quoting S. Rep. No. 103-111, at 10, U.S. Code Cong. & Admin. News 1993, pp. 1892, 1899, 1900).12.

Cutter, 544 U.S. at 723.

In asserting that Sheriff Kincaid could have chosen to disregard the VSP dictated policy and photographed her only with her hijab, or taken the photographs in a private room, Plaintiff offers conclusory statements which do not afford the required deference to the experience and expertise of prison and jail administrators. Compl. ¶ 69. Therefore, she does not allege sufficient facts to show that Sheriff Kincaid was not already using the least restrictive means of processing Plaintiff. Because 1) Plaintiff cannot allege she was confined to Sheriff Kincaid's facility, and 2) Plaintiff has failed to sufficiently allege facts which show that the policies in question do not represent the least restrictive means of advancing a compelling government interest, the RLUIPA claim against Sheriff Kincaid fails and must be dismissed.

### V.    **Plaintiff fails to allege sufficient facts to state a § 1983 claim for First Amendment violations against Sheriff Kincaid in Count II.**

Again assuming the court finds that injunctive relief is proper in this circumstance, Plaintiff fails to assert a First Amendment claim. Plaintiff claims that her rights under the Free Exercise Clause were violated and thus brings a suit under 42 U.S.C. § 1983 challenging both the adherence to VSP policies of photographing arrestees with and without religious head coverings and the uploading of those photographs to VSP's Central Criminal Image System. Similar to RLUIPA claims, "courts must accord deference to the officials who run a prison, overseeing and coordinating its many aspects, including security, discipline, and general administration" when evaluating Free Exercise Clause challenges. Lovelace, 472 F.3d at 199. This deference requires the application of a "reasonableness test [that is] less restrictive than that ordinarily applied to

alleged infringements of fundamental constitutional rights." <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 349 (1987).

In order to successfully claim a violation of the Free Exercise Clause, an inmate or pretrial detainee has to show "(1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." <u>Carter v. Fleming</u>, 879 F.3d 132, 139 (4th Cir. 2018).  If the claim's stated facts show a substantial burden was placed on practicing a sincerely held religious belief, it will still not amount to a violation if the government can show that the policy is "reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987); <u>Wright v. Lassiter</u>, 921 F.3d 413, 418 (4th Cir. 2019).

The <u>Turner</u> analysis has been applied to pretrial detainees and therefore should also apply to arrestees.  "Nevertheless, '[a] detainee simply does not possess the full range of freedoms of an unincarcerated individual.' A detainee's First Amendment rights may be restricted in the interest of prison security." <u>Hause v. Vaught</u>, 993 F.2d 1079, 1081–82 (4th Cir. 1993) (quoting <u>Bell v. Wolfish</u>, 441 U.S. 520, 546 (1979)).

Plaintiff contends that she holds a sincere religious belief as a Muslim woman, Compl. ¶ 21, however, she does not aver sufficient facts to establish that the policies at issue put a substantial burden on the exercise of such belief.   A substantial burden on the exercise of sincerely held religious belief "is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion ... on the other hand." <u>Couch v. Jabe</u>, 679 F.3d 197, 200-01 (4th Cir. 2012).  Although this policy may have placed a slight burden on Plaintiff in

requiring her to remove her hijab for a few moments while her photograph was taken, she was not substantially burdened in exercising the key aspects and practices of her faith.

Assuming *arguendo* that a substantial burden due to the policy is successfully alleged, the court must then analyze whether such a burden was reasonably related to furthering a legitimate penological interest.  Turner, 482 U.S. at 89.  To make this determination, the court must examine four factors: (1) the presence or absence of a valid, rational connection between the prison regulation and the legitimate, neutral, governmental interest put forward to justify it; (2) the existence of available alternative means of exercising the right;  (3) the impact an accommodation of the asserted constitutional right would have on prison staff, other inmates, and on the allocation of prison resources generally; and (4) the absence of ready alternatives available to the prison for achieving the governmental objectives.  Turner, 482 U.S. at 89-90.

Here, Plaintiff has not and cannot assert sufficient facts to show that the policy was unrelated to a penological interest.  The policy serves to correctly identify arrestees in order to determine not only backward-looking information, such as criminal history and making determinations on an individual's propensity for violence, but also to create forward-looking records, so that the individual can be identified in the case of escape, transfer, or readmittance. Identifying arrestees with photographs is rationally connected to a legitimate governmental objective.  See Maryland v. King, 569 U.S. 435, 457-58 (2013); Washington v. Harper, 494 U.S. 210, 225 (1990); See also Zargary v. The City of New York, 607 F. Supp. 2d 609, 613 (S.D.N.Y. 2009) (Photographing woman without religious head covering to accurately identify inmates is essential to security at correctional facilities and requiring facilities to photograph only with head coverings would not be a *de minimus* imposition on correctional facilities); Soliman v. City of New York, No. 15CV5310PKCRER, 2017 WL 1229730, at *6-8 (E.D.N.Y. Mar. 31, 2017); J.H.

v. Bratton, 248 F. Supp. 3d 401, 409 (E.D.N.Y. 2017).  Furthermore, the Fourth Circuit has held that grooming policies requiring short hair was not violative of the First Amendment because such policies suppressed contraband, limited gang activity, maintained discipline and security, and prevented inmates from changing their appearance quickly by cutting their long hair.  Hines v. S.C. Dep't of Corr., 148 F.3d 353, 358 (4th Cir. 1998).

Additionally, the policy is neutral, affecting all religious and non-religious arrestees equally.  "[A] neutral, generally applicable law does not offend the Free Exercise Clause, even if the law has an incidental effect on religious practice."  Hines, 148 F.3d at 357 (referencing Employment Division, Dep't of Human Resources v. Smith, 494 U.S. 872, 876–79 (1990). Plaintiff has also failed to allege facts showing that any of her proposed alternative accommodations would not have a negative impact on staff, other inmates, and/or prison resources.  Because Plaintiff has failed to provide sufficient facts to adduce that the policy was not reasonably related to legitimate penological interests, her Free Exercise § 1983 claim must be dismissed with respect to Sheriff Kincaid.

**VI.** **Plaintiff fails to allege sufficient facts to state a § 1983 claim for Fourth Amendment violations against Sheriff Kincaid in Count III.**

Finally, Plaintiff claims that her rights under the Fourth Amendment were violated and thus brings a suit under 42 U.S.C. § 1983.  Most of the language and all of the facts pled by Plaintiff in Count III are directed to Officer Patrick, however, she requests judgment against Defendants, plural.  To the extent that she is attempting to assert a Fourth Amendment claim against Sheriff Kincaid, Plaintiff has failed to plead sufficient facts to assert a claim upon which relief can be granted, and therefore, Count III must be dismissed against Sheriff Kincaid.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendant, Sheriff Stacey Kincaid, respectfully requests that the Court grant her Motion to Dismiss Plaintiff, Abrar Omeish's, Complaint against her with prejudice.

Respectfully Submitted,

_____
Alexander Francuzenko, VSB # 36510
Philip C. Krone, VSB # 87723
Thea A. Paolini, VSB # 95925
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone: 703.865.7480
Fax: 703.434.3510
alex@cookcraig.com
pkrone@cookcraig.com
tpaolini@cookcraig.com
*Counsel for Defendant Sheriff Stacey Kincaid*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of April, 2021, I served a copy of Defendant, Sheriff

Stacey Kincaid's, Memorandum of Points and Authorities in Support of her Motion to Dismiss

upon the following via CM/ECF to:

> Gadeir Ibrahim Abbas, Esq.
> Lena F. Masri, Esq.
> Justin Mark Sadowsky, Esq.
> CAIR National Legal Defense Fund
> 453 New Jersey Avenue, SE
> Washington, DC  20003
> Phone:  (202) 488-8787
> Fax:     (202) 379-3317
> gabbas@cair.com
> lmasri@cair.com
> jsadowky@cair.com
> *Counsel for Plaintiff*
>
> Julia B. Judkins, Esq.
> Dawn E. Boyce, Esq.
> Nicole Lee Antolic, Esq.
> Bancroft McGavin Horvath & Judkins PC
> 9900 Fairfax Blvd. – Suite 400
> Fairfax, VA  22030
> Phone:  (703) 385-1000
> Fax:     (703) 385-1555
> jjudkins@bmhjlaw.com
> dboyce@bmhjlaw.com
> nantolic@bmhjlaw.com
> *Counsel for Defendant J. Patrick*

                        _____/s/_____
                        Alexander Francuzenko, VSB #36510