**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| ABRAR OMEISH | |
| Plaintiff, | Case No. 1:21-cv-00035-LO-IDD |
| v. | District Judge Liam O'Grady |
| SHERIFF STACEY ANN KINCAID, ET AL, | Magistrate Judge Ivan Davis |
| Defendants. | |

## PLAINTIFF OMEISH'S OPPOSITION TO MOTIONS TO DISMISS

i

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT.................................................................................................................... 2

I.    Sheriff Kincaid lacks sovereign immunity under the Eleventh Amendment. ............... 2

II.   Chief Rohrer is liable under *Monell.* .......................................................................... 5

III.  Omeish has standing to request declaratory and injunctive relief. ............................ 7

  A.    Neither Eleventh Amendment Immunity nor Article III standing prevents the prospective relief Omeish seeks.................................................................................... 7

  B.    Omeish's claim for injunctive relief does not fail for failure to plead the four *eBay* factors. ........................................................................................................................ 9

IV.   Omeish's claim under RLUIPA should proceed. ....................................................... 10

  A.    Omeish was confined to an institution covered by RLUIPA............................... 10

  B.    Omeish states a valid RLUIPA claim. ............................................................... 11

V.    Omeish states a claim under the First Amendment................................................... 13

CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Al-Kadi v. Ramsey County*, 16-cv-2642, 2019 WL 2448648 (D. Minn. June 12, 2019).......... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................... 6

*Bland v. Roberts*, 730 F.3d 368 (4th Cir. 2013)...................................................... 3

*Carter v. Barker*, 225 F.3d 653 (4th Cir. 2000)....................................................... 3

*Carter v. Myers*, 15-cv-2583, 2017 WL 8897155 (D.S.C. July 5, 2017)...........................4, 11

*Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163 (9th Cir. 2011)......... 4

*Christian Legal Society v. Walker*, 453 F.3d 853 (7th Cir. 2006) ............................................. 9

*Coakley v. Welch*, 877 F.2d 304 (4th Cir. 1989)....................................................... 8

*Dotson v. Chester*, 937 F.2d 920 (4th Cir. 1991)...................................................... 6

*eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388 (2006) ...........................................8, 9

*El Ali v. Barr*, 473 F. Supp. 3d 479 (D. Md. 2020)..................................................... 7

*Elrod v. Burns*, 427 U.S. 347 (1976) ...................................................................... 9

*Employment Division v. Smith*, 492 U.S. 872 (1990)................................................. 16

Forde v. Zickefoose, 612 F.Supp.2d 171 (D. Conn. 2009) ................................... 12, 13, 14

*Fromer v. Scully*, 874 F.2d 69 (2d Cir.1989)............................................................. 15

*Grayson v. Peed*, 195 F.3d 692 (4th Cir. 1999) ....................................................... 6

*Greenhill v. Clarke*, 944 F.3d 243 (4th Cir. 2019)..................................................... 13

*Hall v. Marion School Dist. No. 2*, 31 F.3d 183 (4th Cir. 1994) ................................... 6

*Harter v. Vernon*, 101 F.3d 334 (4th Cir. 1996)......................................................2, 3

Hines v. South Carolina DOC, 148 F.3d 353 (4th Cir. 1998)........................................ 16

*Holt v. Hobbs,* 574 U.S. 352 (2015) .............................................. 10, 12, 15

*Iota Xi Chapter Of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138 (4th Cir. 2009)................. 7

*Jett v. Dallas Independent School Dist.*, 491 U.S. 701 (1989) ...................................... 6

*Johnson v. Jessup*, 381 F. Supp. 3d 619 (M.D.N.C. 2019)........................................... 7

*Legend Night Club v. Miller*, 637 F.3d 291 (4th Cir. 2011).......................................... 9

*Lighthouse Inst. for Evangelism v. Long Branch*, 510 F.3d 253 (3d Cir.2007) ........................ 4

*Lovelace v. Lee*, 472 F.3d 174 (4th Cir. 2006) ....................................................... 6

*Lytle v. Doyle*, 326 F.3d 463 (4th Cir. 2003) .......................................................... 6

*May v. Newhart*, 822 F. Supp. 1233 (E.D. Va. 1993) ......................................... 3, 4, 5, 6

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ...............................5, 6

*Opulent Life Church v. Holly Springs*, 697 F.3d 279 (5th Cir. 2012)........................................ 4

*Ram Ditta v. Maryland Nat'l Capital Park and Planning Comm.*, 822 F.2d 456 (4th Cir.1987)2, 4

*Republic of Paraguay v. Allen*, 134 F.3d 622 (4th Cir. 1998)......................................... 7

*Sanchez v. Truse Trucking, Inc.*, 74 F. Supp. 3d 716 (M.D.N.C. 2014)................................. 11

*Schlussel v. Dearborn Heights*, 17-cv-11546, 2017 WL 4535811 (E.D. Mich., Oct. 11, 2017)
.................................................................................................................12, 15

*Smith v. Ozmint*, 578 F.3d 246 (4th Cir. 2009)........................................................ 6

*Soliman v. City of New York*, 15-cv-5310, 2017 WL 1229730 (E.D.N.Y. Mar. 31, 2017) ...... 15

*Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987) .................................................. 6

*Tandon v. Newsom*, 141 S. Ct. 1294 (2021)........................................................... 16

Tanzin v. Tanvir , 141 S. Ct. 486 (2020) ...................................................1, 4, 5

*Turner v. Safley*, 482 U.S. 87 (1987)........................................... 13, 14, 15

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................................... 7
*Zargary v. City of New York*, 412 F. App'x 339 (2d Cir. 2011) ............................ 15

**Statutes**
42 U.S. Code § 2000cc–1 ............................................................................. 11
42 U.S.C. § 1997(1)(B)(iii) ......................................................................... 10
42 U.S.C. § 2000cc-2(b) ............................................................................. 11
42 U.S.C. 2000bb(c) ................................................................................... 4

**State Codes**
Virginia Code § 15.2-1609.7 ....................................................................... 3
Virginia Code § 15.2-1613 ........................................................................... 3
Virginia. Code Ann. § 53.1–88 ................................................................... 3

## INTRODUCTION

Abrar Omeish was maced during a traffic stop, arrested, and then ordered to remove her religious head covering while she was detained at the Fairfax County Adult Detention Center. The day this happened—March 5, 2019—was the day many of Ms. Omeish's rights were violated.

And although there is an excessive force component to this case related to Ms. Omeish being senselessly maced, the pending motions to dismiss do not regard it. Rather, the motions limit themselves to the claims against Sheriff Kincaid and Chief Rohrer for photographing Abrar Omeish and others without their religious head coverings at the Fairfax County Adult Detention Center.

But this part of the case is the clearest. In requiring people who wear hijabs, yarmulkes, and turbans to remove such clothing, Sheriff Kincaid and Chief Rohrer have ignored how other facilities throughout the country avoid this needless incursion against the religious rights of people in their custody. It turns out to be quite simple.

Other entities—including police departments in New York City and Dearborn—and other jurisdictions—including in South Carolina, Minnesota, and Connecticut—simply photograph people *with* their religious head coverings. They do so with no apparent issue all the time, everyday.

Though Sheriff Kincaid and Chief Rohrer point their fingers at each other, both are implicated equally in violating Ms. Omeish's rights at the Fairfax County Adult Detention Center. Omeish sues Sheriff Kincaid because the unconstitutional policy against religious head coverings is her policy, and Omeish sues Chief Rohrer because he allows his agents to

1

participate and assist in the unconstitutional policy, reflecting his own policy of participation. They are both responsible.

Sheriff Kincaid makes a kitchen sink full of claims in support of her motion to dismiss, including that she is immune from suits under the Eleventh Amendment despite being a locally operated and locally funded office, that RLUIPA does not provide a damages remedy despite the Supreme Court's recent decision in *Tanvir v. Tanzin*, that there is a secret minimum time requirement of confinement before RLUIPA provides any religious rights, that Omeish failed to adequately plead the *eBay* factors in order to be eligible for permanent injunctive relief, that Omeish failed to adequately allege the absence of the affirmative RLUIPA defense of narrowly-tailored-to-a-compelling-government-interest, and that Omeish failed to adequately allege penological interest under the First Amendment. For the reasons explained below, the Court should reject all of these arguments.

Meanwhile, Chief Rohrer just blames it all on Sheriff Kincaid, saying that it is her policy at issue, not his. But this not only ignores the County's own responsibility for running a county jail, it also ignores that Chief Rohrer's agents actively assist in executing the challenged policy. And while Chief Rohrer argues that Omeish has not plead such active assistance, the Amended Complaint shows otherwise.

## ARGUMENT

### I.    Sheriff Kincaid lacks sovereign immunity under the Eleventh Amendment.

Kincaid first argues (Dkt. 28 at 4-5) that because Virginia Sheriffs are state officials under the Virginia constitution, she is entitled to Eleventh Amendment immunity from monetary damages claims.  Not so. Kincaid is wrong to argue, without citation to any authority, that this fact by itself means she is immune from monetary damages under Section 1983.  That is not the law.

2

Instead, the Fourth Circuit applies the four-part, nonexclusive *Ram Ditta* test for determining whether an official has Eleventh Amendment immunity as an alter ego of the state. *Ram Ditta v. Maryland Nat'l Capital Park and Planning Comm.*, 822 F.2d 456 (4th Cir.1987); *see generally Harter v. Vernon*, 101 F.3d 334, 337 (4th Cir. 1996) (North Carolina sheriff lacks sovereign immunity). "Although a federal court may consider how an entity is treated under state law, the question of whether an agency is an alter ego of the state is a question of federal, not state, law." *Harter, id.* (quoting *Ram Ditta, id.* at 458 n.5) (cleaned up).

The primary inquiry is "whether the state treasury will be responsible for paying any judgment that might be awarded." *Harter, id.* (quoting *Ram Ditta, id.* at 457). "The other three inquiries include, but are not necessarily limited to, [1] whether the entity exercises a significant degree of autonomy from the state, [2] whether it is involved with local versus statewide concerns, and [3] how it is treated as a matter of state law." *Harter, id.* (quoting *Ram Ditta, id.* at 457-58) (cleaned up).

Here, like in North Carolina, the state treasury would not be liable for a judgment against Kincaid. Although the state pays Kincaid's salary and those of her full-time deputies, Virginia Code § 15.2-1609.7, there is nothing in Virginia law that would require the state or the treasury to pay any judgments against Kincaid. Instead, under Virginia Code § 15.2-1613, it would be non-immune Fairfax County that "appropriate funds for the operation of the sheriff's office." *See also* Virginia. Code Ann. § 53.1–88; *Carter v. Barker*, 225 F.3d 653 (4th Cir. 2000) (Table, unpublished) (North Carolina sheriff) ("the state treasury and state sovereignty are not implicated in this suit, and the state does not control the Sheriff's personnel decisions").

*Bland v. Roberts*, 730 F.3d 368 (4th Cir. 2013), *as amended* (Sept. 3, 2013), is not to the contrary. There, although the Court found that the Virginia sheriff's office was immune under the Eleventh Amendment for a claim for backpay, that is because "[t]he district court also determined that "the State would be liable to pay adverse judgments." *Id.* at 390. But that is because, under Virginia Code § 15.2-1609.7, deputy salaries are the responsibility of the state. Here, in a case involving operations, the State has no such fiscal responsibility. *See May v. Newhart*, 822 F. Supp. 1233, 1236 (E.D. Va. 1993); Virginia Code § 15.2-1613.

The next two *Ram Ditta* factors, like in *Harter*, all likewise point against a finding of sovereign immunity. Despite some statutory restrictions, the county sheriff generally has autonomy, and the operation of a County jail is a matter of local concern. *May*, *id.; see also May v. Newhart* ("*May Reconsideration*")*, 92-cv-238, 1993 WL 760138, at *1 (E.D. Va. July 7, 1993) ("When a sheriff executes his law enforcement duties, he acts on behalf of the state; when he fires and hires his own deputies he does so in his capacity as a constitutional officer. But when he operates a jail he acts on behalf of the locality he serves."); *compare with Carter*, 225 F.3d 653*.

For the same reasons, *Sossaman* does not provide Kincaid insulate her from paying RLUIPA damages. *See* Kincaid Motion (Dkt. 28) at 5. RLUIPA states that "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). This is fundamentally the same language that RFRA uses, which states "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. 2000bb(c). So in *Tanzin v. Tanvir*, the Supreme Court clarified that damages are available under RFRA. 141 S.

Ct. 486 (2020). As RLUIPA uses the same language under RFRA, the same result follows: Damages are an available remedy under RLUIPA.[1]

*Sossamon* is inapplicable for the reasons explained by *Tanvir* itself: "Our opinion in *Sossamon* does not change this analysis. Sossamon held that a State's acceptance of federal funding did not waive sovereign immunity to suits for damages under a related statute—the Religious Land Use and Institutionalized Persons Act of 2000—which also permits appropriate relief." 141 S. Ct. at 492-93. "The obvious difference is that this case features a suit against individuals, who do not enjoy sovereign immunity." 141 S. Ct. at 492-93. As explained above, Sheriff Kincaid has no sovereign immunity, and so is liable under RLUIPA for monetary damages as well.

## II.      Chief Rohrer is liable under *Monell*.

Chief Rohrer first asserts that a suit against the Chief is equivalent to the suit against Fairfax County, and Plaintiffs agree. Rohrer Motion (Dkt. 33) at 4. But Rohrer makes this point in the context of an argument that Sheriff Kincaid—and only Sheriff Kincaid—is responsible and may be held liable for the policy against religious headcoverings. *Id.* at 4-6. This is incorrect for two reasons.

First, Rohrer is liable to the extent that the police department and the County delegated authority to Sheriff Kincaid to order Ms. Omeish to remove her hijab. Second, even if Kincaid's policy against religious headcoverings is a product of her own authority—rather than

---

[1] Even before *Tanzin* was decided, courts understood RLUIPA to permit damages claims. See *Carter v. Myers*, 15-cv-2583, 2017 WL 8897155, at *6 (D.S.C. July 5, 2017), *report and recommendation adopted*, 2017 WL 3498878 (Aug. 15, 2017); *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1168 (9th Cir. 2011); *Lighthouse Inst. for Evangelism v. Long Branch*, 510 F.3d 253, 260–61 (3d Cir.2007) (same); *Opulent Life Church v. Holly Springs*, 697 F.3d 279, 290 (5th Cir. 2012).

delegated authority from the police department or the County—Rohrer's active participation in executing Kincaid's policy makes him responsible. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978)

A Fairfax County Sheriff's Office policy—SOP 533—directs Kincaid's agents to remove an arrestee's religious head covering and capture a booking photo without an arrestee's religious head covering. Amended Complaint (Dkt. 24) ¶ 48. But as *May* makes clear, the operation of the jail is a Fairfax County responsibility, regardless of whether the County delegated that authority to the Sheriff's office. 822 F. Supp. at 1236; *see also May Reconsideration*, 1993 WL 760138, at *1 (explaining how "localities, not sheriffs, are responsible for the operation of local jails" in Virginia); *Dotson v. Chester*, 937 F.2d 920, 926 (4th Cir. 1991) ("our inquiry focuses on the entity operating the County Jail"). And by delegating or otherwise acquiescing to SOP 533, the County remains liable under *Monell*. *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987).

Separately, as the Amended Complaint makes clear, SOP 533 is also implemented by Rohrer's agents, including Defendant Patrick. *Id.* ¶¶ 49, 57. 61.  By knowingly having his agents participate in SOP 533, Rohrer remains liable under *Monell* as well. *Hall v. Marion School Dist. No. 2*, 31 F.3d 183, 196 (4th Cir. 1994). After all, "it is for the jury to determine whether their decisions have caused the deprivation of rights at issue … by acquiescence in a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989) (cleaned up). At minimum, Chief Rohrer and the County's knowledge of SOP 533 and failure to stop it or at least prohibit their employees from participating constitutes a failure to train.

*Lytle v. Doyle*, 326 F.3d 463 (4th Cir. 2003) (failure to train proven "if it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violation").

Chief Rohrer cites *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999), and *Lovelace v. Lee*, 472 F.3d 174 (4th Cir. 2006), in support of his argument disclaiming any responsibility. But in those cases, the Fourth Circuit did not consider the *Dotson* issue. In any event, there was no evidence of participation and acquiescence in either of those cases, as there is here.

Chief Rohrer separately makes an *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), argument (at 8-10) against accepting as true Omeish's claims that Chief Rohrer's agents had a policy of acquiescing and participating in SOP  533. But given Patrick's participation (Amended Complaint ¶¶ 49, 57, 61), Omeish has plausibly alleged Rohrer's participation. *See, e.g., El Ali v. Barr*, 473 F. Supp. 3d 479, 517 (D. Md. 2020) (plaintiffs own experiences sufficient to plausibly allege an unconstitutional policy).

## III.     Omeish has standing to request declaratory and injunctive relief.

### A.     Neither Eleventh Amendment Immunity nor Article III standing prevents the prospective relief Omeish seeks.

Sheriff Kincaid, arguing both Eleventh Amendment immunity (which she does not enjoy in the first place, *see* § I, above) and Article III redressibility standing, argues that Omeish cannot obtain "retrospective" declaratory and injunctive relief. Kincaid Motion at 5-7.

Regardless of the source of this argument, it is wrong. When a violation is ongoing, and when the relief sought is prospective, the Eleventh Amendment does not prohibit non-monetary relief. *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998). Likewise, Article III "redressability" merely "requires a plaintiff to allege that 'the asserted injury was

the consequence of the defendants' actions, ***or that the prospective relief will remove the harm***.'" *Iota Xi Chapter Of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 148 (4th Cir. 2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 505 (1975)) (emphasis in *Iota Xi*).

In *Johnson v. Jessup*, 381 F. Supp. 3d 619, 628 (M.D.N.C. 2019), the North Carolina DMV revoked certain plaintiffs' drivers licenses in the past. The DMV argued that the alleged violations of substantive and procedural due process in revocation was completed and therefore any relief was by definition retroactive. Id. at 627. But the District Court found plaintiffs "easily" satisfied the requirements of *Paraguay*. First, "Plaintiffs continue to experience the harmful consequences of that action so long as their licenses remain revoked." *Id.* at 628. And second, plaintiffs were indeed seeking prospective relief in the form of obtaining their drivers licenses back.

So too here. "Ms. Omeish's image without her hijab is still in Defendant Kincaid's and Defendant Rohrer's possession and available to law enforcement agencies as well to members of the public who request it." Amended Complaint ¶ 59. Omeish is therefore still suffering an ongoing harm from the alleged violation regardless of whether it has already been completed in some theoretical way. *See Coakley v. Welch*, 877 F.2d 304, 307 n.2 (4th Cir. 1989) (noting the "ongoing violation" prong is almost universally satisfied whenever some prospective relief is sought). And among other appropriate relief the Court could grant, Omeish is at the minimum seeking prospective relief against both Defendants in the form of destruction of the unlawfully-obtained photograph. *See Coakley*, *id.* (noting that prospective relief is anything other than "an illegitimate award of retroactive damages").

Because Ms. Omeish seeks prospective relief, her claims for declaratory and injunctive relief may go forward under Article III. Likewise, they would not be barred by sovereign immunity even if Sheriff Kincaid could assert that immunity in the first instance.

**B.    Omeish's claim for injunctive relief does not fail for failure to plead the four *eBay* factors.**

Rule 12(b)(6) applies to a "failure to state a claim upon which relief can be granted," and unlike Omeish's RLUIPA claim or her First Amendment claim, her seeking a permanent injunction in her Amended Complaint is not a "claim" as that term is commonly understood. Perhaps because of that, although Kincaid argues that a claim for a permanent injunction can be dismissed for failure to allege the four-factor *Ebay* test (at 8-9), she cites no cases for such a proposition, and Omeish has found no such case either.[2] *See eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388 (2006).

In any event, Omeish's allegations are sufficient to show an entitlement to a permanent injunction for the same reasons her RLUIPA and First Amendment claims are not properly subject to dismissal at this stage:

- *Irreparable injury*: "As to irreparable injury, it is well established that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion) (citation omitted)." *Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011).

- *Inadequacy of alternative remedies*: "[M]onetary damages are inadequate to compensate for the loss of First Amendment freedoms." *Id.*

- *Balance of hardships*: Because "is in no way harmed by issuance of an injunction that prevents the state from enforcing unconstitutional restrictions," *id.*, at 302-

---

[2] Sheriff Kincaid also has an argument (at 7-8 and again at 9-10) against a preliminary injunction, but Omeish has not sought preliminary relief in this case.

9

03, any substantial burden to Omeish's religious rights is sufficient to show that this factor favors Omeish.

- ***The public interest would not be disserved***: "[I]njunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006); see also *Legend Night Club*, 637 F.3d at 302 ("upholding constitutional rights is in the public interest").

Based on the *eBay* factors as explained by *Legend Night Club*, constitutional (and RLUIPA) violations always warrant an injunction. Of course. If the Court were saying otherwise, then what it would be saying is that the Government can continue to indefinitely violate the Constitution, perhaps paying damages each time along the way. Or perhaps not, as both institutional Defendants now seek immunity of one sort or another from damages.

## IV.    Omeish's claim under RLUIPA should proceed.

### A.    Omeish was confined to an institution covered by RLUIPA.

RLUIPA states that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S. Code § 2000cc–1; *see Holt v. Hobbs,* 574 U.S. 352, 357-58 (2015). Section 42 U.S.C. § 1997(1)(B)(iii) includes jails such as Fairfax County's Adult Detention Center, where Omeish was held and where FOP 533, the hijab photograph policy, was enforced.

Sheriff Kincaid denies none of this. Instead, Sheriff Kincaid claims (at 11) that "Plaintiff does not state that she was ever remanded to the custody of ADC." But RLUIPA does

not require anywhere that an individual be "remanded" to a facility, just that she be "confined" to one. And of course, as the Amended Complaint makes clear, Omeish was "confined" to the Adult Detention Center. Amended Complaint ¶ 65. "Plaintiff was not free to leave, was subject to Defendants' control, and was only allowed to leave after Defendants presented her to a magistrate judge that permitted Plaintiff's release. *Id.* How else would Sheriff Kincaid exercise any authority over Omeish or implement FOP 533 against her? That authority only exists based on Sheriff Kincaid's authority to supervise and operate the Adult Detention Center and those, like Omeish, who are confined to it.

Nor is it relevant that Omeish was only in custody for "about one to two hours at ADC." Amended Complaint ¶ 60. There is no minimum amount of time of confinement necessary for RLUIPA to apply. If there were, there would be no need for RLUIPA to use the phrase "residing in or confined to."

### B.   Omeish states a valid RLUIPA claim.

Sheriff Kincaid further argues (at 12-13) that Omeish's RLUIPA claim must fail because Plaintiff failed to sufficiently allege that SOP 533, the policy against religious headcoverings, is not narrowly tailored to meet a compelling government interest. But the burden of proving that remains on Sheriff Kincaid. 42 U.S. Code § 2000cc–1 ("unless the government demonstrates"); 42 U.S.C. § 2000cc-2(b) ("the government shall bear the burden of persuasion"). As narrowly-tailored-to-a-compelling-governmental-interest is an affirmative defense, Omeish has no duty to allege anything at all, conclusory or not. *Sanchez v. Truse Trucking, Inc.*, 74 F. Supp. 3d 716, 727 (M.D.N.C. 2014) (stringcite omitted).

And other Courts in and outside of this Circuit have established that policies requiring incarcerees and others to remove their hijab for identification photos properly give rise to

claims under RLUIPA. Thus, in *Carter v. Myers*, "the court [found] the defendants have failed to meet their burden of showing that requiring Carter to remove her hijab in the circumstances presented here was the least restrictive alternative of furthering their interest in the identification of prisoners." 15-cv-2583, 2017 WL 8897155, at *9 (D.S.C. July 5, 2017), *report and recommendation adopted*, 2017 WL 3498878 (Aug. 15, 2017). Specifically, the "defendants do not explain why photographing a Muslim woman without her hijab in front of unrelated men and making that photograph available to unrelated men is the least restrictive means of ensuring they can identify inmates." *Id.*; *see also Forde v. Zickefoose*, 612 F.Supp.2d 171, 179 (D. Conn. 2009) ("Respondent has not demonstrated to the court that requiring Petitioner to carry a photograph of her without her hijab is the least restrictive means of furthering the interest of prison security"); *Al-Kadi v. Ramsey County*, 16-cv-2642, 2019 WL 2448648, at *10 (D. Minn. June 12, 2019) ("the Court finds that a reasonable jury could conclude that forcing Al-Kadi to remove her hijab in front of a male officer, even for a short time, constituted a substantial burden because Al-Kadi faced punishment for refusing to do so").

Sheriff Kincaid claims Omeish failed to show "that Sheriff Kincaid was not already using the least restrictive means of processing" Omeish. Of course, as explained above, that is not Omeish's burden. But even if it were, Omeish already showed that NYPD uses a less restrictive method. Amended Complaint ¶ 71. And, of course, New York is not the only police department that uses less restrictive means. *Id.* (stating NYPD was just one example); *see also Schlussel v. Dearborn Heights*, 17-cv-11546, 2017 WL 4535811 (E.D. Mich., Oct. 11, 2017) (elaborating on Dearborn Heights' policy of "not tak[ing] booking photographs of women who wear hijabs or burkas with their head coverings off" in rejecting Establishment Clause challenge to policy brought by famed Islamophobe Debbie Schlussel); *Holt v. Hobbs*, 574 U.S.

352, 368 (2015) (explaining that other "well-run" institutions using a less restrictive method

tends to show that the government's proffered method fails under RLUIPA).

In a footnote (at 16 n.1), Sheriff Kincaid complains that "New York precedent allows

for the photographing of Muslim women without their hijabs." But regardless of whether that

is true—Kincaid cites cases involving the First Amendment rather than RLUIPA, *but see* § V,

below—that a New York court might have at one point allowed the NYPD to take such pho-

tographs does not mean that they still currently do so.

## V.      Omeish states a claim under the First Amendment.[3]

Sheriff Kincaid does not deny Omeish's sincerely-held religious beliefs but instead as-

serts (at 14) that "she does not aver sufficient facts to establish that the policies at issue put a

substantial burden on the exercise of such belief." Not true. Omeish has alleged her "faith

requires her to wear hijab at all times when she is in mixed gendered spaces outside of her

immediate family," and that "[a]ppearing in public without hijab or being photographed with-

out wearing hijab and having that photo available to the public is a serious breach of Ms.

Omeish's faith and a deeply humiliating and defiling experience in conflict with her sincerely-

held religious beliefs." Amended Complaint ¶¶ 23-24. To confirm any doubts about her sin-

cerity, Omeish also notes that she "has not been in public without her hijab since she was in

second grade." *Id.* at ¶ 24. It follows naturally that a policy which requires Omeish to remove

her hijab in public for a photograph is a substantial burden on her beliefs. *See Forde*, 612 F.

Supp. 2d at 178-79 (noting, under RLUIPA, "it is reasonable to believe that forcing Petitioner

---

[3] Omeish also brings a First Amendment claim against Defendant Patrick, who did not file a
motion to dismiss. Omeish does not bring her RLUIPA claim against Officer Patrick, who as
an individual, is not covered by the Spending Clause jurisdictional hook of RLUIPA.

13

to display the photograph forces her to violate her religious practices for much the same reason that forcing her to remove her hijab in front of these men would"); id. at 180 (noting test is same for First Amendment); *see also Greenhill v. Clarke*, 944 F.3d 243, 250 (4th Cir. 2019) ("we have held that the term [substantial burden] has the same meaning [under RLUIPA] as it does in the First Amendment context").

Kincaid goes on (at 15-16) to claim that even if Omeish could show a substantial burden, she cannot satisfy the *Turner* test "to show that the policy was unrelated to a penological interest." *Se Turner v. Safley*, 482 U.S. 87 (1987). This misstates the *Turner* test. The *Turner* test is the test courts use to determine whether a constitutionally-suspect regulation is permissible in the penal setting. Courts look to four factors: (i) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (ii) whether there are alternative means of exercising the right in question that remain open to prison inmates; (iii) whether accommodation of the asserted constitutional right will have an unreasonable impact upon guards and other inmates, and upon the allocation of prison resources generally; and (iv) whether there are reasonable alternatives available to the prison authorities. *Id.* at 89-91. Importantly, the *Turner* test does not require a plaintiff such as Omeish to show all four *Turner* factors. Instead, *Turner* involves a balancing of the four factors. *Id.*

So in *Forde*, the District Court considered a policy that was identical for all relevant purposes and found the BOP's forced-hijab-removal policy did not withstand scrutiny under *Turner*. "The government's policy satisfies the first two prongs of *Turner*." 612 F. Supp. 2d at 181. But "the third and fourth prongs of Turner have not been satisfied." *Id.* The "availability of an alternative" existed, and the Government "provided no evidence to demonstrate that

14

the hijab policy does more to promote security than Petitioner's proposed alternative, aside from the fact that it is the current BOP regulation." *Id.* "Whether [the] alternative is a reasonable alternative remains an issue of material fact that is disputed." *Id.* at 181-82.

So too here. Omeish has noted that alternative policies exist, whether in New York, Dearborn, or elsewhere. Without Kincaid elaborating on what penological interest or interests there are in hijab removal—all Kincaid now asserts is that it would be necessary "so that the individual can be identified in the case of escape, transfer, or readmittance."[4] It is unclear why, for instance, the Dearborn policy would not do as much or more to promote security. Under that policy, "the City will not take booking photographs of women who wear hijabs or burkas with their head coverings off." *Schlussel*, 2017 WL 4535811, at *1. "If there are any identifying marks present, the officer taking the photographs will photograph the identifying mark only." *Id.* Whether or not such alternatives are insufficiently reasonable under *Turner* remains a question for the Court to resolve at Summary Judgment or trial. *Forde*, 612 F. Supp. 2d at 181-82.

The three New York cases cited by Kincaid do nothing to detract from *Forde* or the conclusion it compels. In *Zargary v. City of New York*, 412 F. App'x 339 (2d Cir. 2011), (unpublished), the plaintiff lost at summary judgment (not in a motion to dismiss) because she failed "to identify any such 'obvious, easy alternatives' that could accomplish the same ends 'at de minimis cost to valid penological interests.'" *Id.* at 342 (quoting *Fromer v. Scully*, 874 F.2d 69, 76 (2d Cir.1989) (finding a policy similar to the one struck down in *Holt* under RLUIPA as reasonable under *Turner*)). In *Soliman v. City of New York*, 15-cv-5310, 2017 WL

---

[4] To the extent that Kincaid alleges that it is necessary to "correctly identify arrestees," Omeish had her state-issue driver's license on her already. Amended Complaint ¶¶ 26-33, 87-88.

15

1229730, at *5 (E.D.N.Y. Mar. 31, 2017), the Court did not reach the merits of the First Amendment claim and instead found that plaintiff failed to allege any of the defendants forcibly removed her hijab. And Bratton was likewise based on a failure to allege a policy of hijab removal: "[T]o the extent that Plaintiff's argument is that any policy requiring arrestees to remove their head coverings for arrest photos is unconstitutional, that argument fails, because the Court would need to know more about the policy to evaluate its constitutionality, namely, whether the policy, either on paper or in practice, allows or prohibits religious accommodations with respect to the removal requirement." 248 F.Supp.3d at 409-10. *Hines v. South Carolina DOC*, in contrast, involves a different policy (involving a beard policy like the one struck down in *Holt*), and says nothing about alternatives. 148 F.3d 353 (4th Cir. 1998). And *Hines* is based on the neutrality principle in *Employment Division v. Smith*, 492 U.S. 872 (1990), *see Smith v. Ozmint*, 578 F.3d 246, 251 (4th Cir. 2009), which has since been struck down (if silently) by *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021), in any event.

## CONCLUSION

The Court should deny both Sheriff Kincaid's and Chief Rohrer's Motions to Dismiss.

16

Dated: May 28, 2021                              Respectfully submitted,


CAIR LEGAL DEFENSE FUND
BY: /s/ Lena F. Masri
Lena F. Masri (VA 93291)
   lmasri@cair.com
Gadeir I. Abbas (VA 81161)
   gabbas@cair.com
Justin M. Sadowsky (VA 73382)
   jsadowsky@cair.com
453 New Jersey Ave., S.E.
Washington, DC 20003
Phone: (202) 742-6420
Fax: (202) 488-0833

17