IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ABRAR OMEISH, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 1:21-cv-0035 |
| ) | Hon. Liam O'Grady |
| SHERIFF STACEY ANN KINCAID, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on motions to dismiss filed by Defendants Sheriff Stacey Ann Kincaid (Dkt. 27) and Chief David M. Rohrer (Dkt. 32). Both these Defendants are being sued in their official capacities and move for dismissal of Plaintiff Abrar Omeish's first amended complaint (Dkt. 24) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Sheriff Kincaid's motion to dismiss (Dkt. 27) is **GRANTED IN PART**, and Chief Rohrer's motion to dismiss (Dkt. 32) is **GRANTED**.

### I. BACKGROUND

This dispute arises from an arrest of Ms. Omeish by Defendant Officer J. Patrick of the Fairfax County Police Department ("FCPD") on March 5, 2019. Dkt. 24, at 2 ¶ 2. Officer Patrick has not filed a motion to dismiss, so Ms. Omeish's arrest is not presently at issue. *See* Dkt. 37, at 5 ("[A]lthough there is an excessive force component to this case related to Ms. Omeish being senselessly maced, the pending motions to dismiss do not regard it."). Instead, the instant motions concern the photographing of Ms. Omeish at the Fairfax County Adult Detention Center ("ADC") during "booking" following her arrest, as well as the preservation of Ms. Omeish's images taken by Defendants. *See id.*

Ms. Omeish is a devout "Muslim woman who wears a hijab in public and with her face completely visible." Dkt. 24, at 6–7, ¶ 22. The wearing of a hijab in mixed gendered spaces outside Ms. Omeish's immediate family is central to her faith, and integral to her identity as a Muslim woman. *Id.* at 5–6, ¶¶ 22–23. "Appearing in public without [a] hijab or being photographed without wearing [one] and having that photo available to the public is a serious breach of Ms. Omeish's faith and a deeply humiliating and defiling experience in conflict with her sincerely-held religious beliefs." *Id.* at 6, ¶ 24. Ms. Omeish has not been in public without her hijab since she was in the second grade. *Id.* The sincerity of her religious convictions and practices is not in dispute.

As noted, Ms. Omeish was arrested by Officer Patrick of the FCPD on March 5, 2019. *See id.* at 6–8, ¶¶ 25–42. Following this arrest, Officer Patrick transported Ms. Omeish to the Fairfax County ADC. *Id.* at 8–9, ¶ 43. After arriving at the ADC, "agents of [Sheriff] Kincaid surrounded Ms. Omeish and search[ed] her as a condition of her entry into the facility." *Id.* at 9, ¶ 44. After receiving medical care for injuries sustained during the arrest and making an initial appearance before a Fairfax County magistrate, Ms. Omeish was processed. *Id.* ¶¶ 45–47. As part of this "processing," she was instructed to "remove her hijab" for photographing at the direction of Sheriff Kincaid's agents and Officer Patrick. *Id.* ¶ 47. This approach tracked a "Fairfax County Sheriff's Office policy—SOP 533—[which] establishes a county-specific procedure for handling arrestees who wear what SOP 533 calls 'religious head coverings.'" *Id.* ¶ 48. SOP 533 specifically requires the removal of an arrestee's religious head covering to capture a booking photo without the covering. *Id.*

Ms. Omeish initially objected to being photographed without her hijab and did not comply with SOP 533. *Id.* at 9–10, ¶¶ 49–52. However, she was then informed by a female

2

agent of Sheriff Kincaid that "if she did not remove [her hijab], it would be removed against her will." *Id.* at 10, ¶ 54. Ms. Omeish unpinned her hijab, but was told by the agent that this "would not be sufficient." *Id.* ¶ 55. The Sheriff's agent then "proceeded to remove [the hijab] from Ms. Omeish's head," *id.*, and, "in concert with [Officer] Patrick who was acting as [Chief] Rohrer's agent," photographed Ms. Omeish without her hijab. *Id.* ¶ 57. The images taken were retained and uploaded by agents of Sheriff Kincaid to a Central Criminal Image System ("CCIS") "owned and operated by Virginia State Policy ("VSP") [sic]." *Id.* at 10–11, ¶ 58. These images are still "available to law enforcement agencies as well [as] to members of the public who request [them]." *Id.* at 14, ¶ 81. This causes Ms. Omeish "mental anguish, physical and emotional distress, humiliation, and embarrassment." *Id.* at 14, ¶ 81.

Ms. Omeish sued Defendants on January 12, 2021 before filing a first amended complaint on April 21, 2021. *See generally* Dkt. 24. In her operative pleading, she alleges, *inter alia*, a violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (Count I) and a violation of the First Amendment under 28 U.S.C. § 1983 (Count II). *See* Dkt. 24, at 11–14. Sheriff Kincaid and Chief Rohrer filed Rule 12(b)(6) motions to dismiss. Dkts. 27, 32. The matter is now fully briefed and ripe for review.

## II. LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), a Court evaluates a Plaintiff's claims under *Twombly-Iqbal*'s plausibility standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under this standard, the Court accepts as true the Plaintiff's well-pleaded allegations, and views the complaint in the light most favorable to the non-movant. *T.G. Slater & Son, Inc. v. Donald P. and Patricia Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004). The Plaintiff must provide more than merely "labels and conclusions" or a

3

"formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Rather, it must "allege facts sufficient to raise a right to relief above the speculative level, stating a claim that is plausible on its face, rather than merely conceivable." *Vuyyuru v. Wells Fargo Bank, N.A.*, 2016 WL 356087, at *2 (E.D. Va. Jan. 28, 2016) (citing *Iqbal*, 556 U.S. at 678).

### III. DISCUSSION

#### a. Sheriff Kincaid

##### i. 42 U.S.C. § 1983

Ms. Omeish sues Sheriff Kincaid in her official capacity only. Dkt. 24, at 1. Ms. Omeish's suit therefore operates as a suit against the Commonwealth or a subdivision thereof. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991). To that end, the Commonwealth wields Eleventh Amendment sovereign immunity against Section 1983 suits, and is not considered a "person" under the statute. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997); *Will*, 491 U.S. at 71; *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 701 (1978). The same is not true for Virginia counties and municipalities. This distinction frames the Parties' dispute: Sheriff Kincaid argues that she is a Commonwealth official and not susceptible to Section 1983 liability, whereas Ms. Omeish argues the opposite.

In *Ram Ditta v. Maryland National Capital Park & Planning Commission*, the Fourth Circuit outlined a nonexclusive four-part test for determining whether a Defendant is a local entity that can be sued under Section 1983 or, alternatively, whether a Defendant is an "arm of the state" that possesses Eleventh Amendment sovereign immunity. *See* 822 F.2d 456 (4th Cir.

4

1987); *Pele v. Pennsylvania Higher Educ. Assistance Agency*, 13 F. Supp. 3d 518, 523 (E.D. Va. 2014). Under the *Ram Ditta* test, "[t]he first and most important consideration is whether the state treasury will pay any judgment that might be awarded." *Savage v. Cty. of Stafford, Va.*, 2010 WL 1873222, at *3 (E.D. Va. May 4, 2010) (citing 822 F.3d at 457); *see also* Dkt. 37, at 7 (citing *Harter v. Vernon*, 101 F.3d 334, 337 (4th Cir. 1996)) ("The primary inquiry is whether the state treasury will be responsible for paying any judgment that might be awarded."); *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995) ("[I]t appears that a determination that the state treasury will be liable for a particular judgment is largely, if not wholly, dispositive of entitlement to Eleventh Amendment immunity."); *see, e.g., U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 141 (4th Cir. 2014); *Epperson v. Payne*, 2017 WL 1194715, at *4–5 (W.D. Va. Mar. 30, 2017); *Brown v. Caldwell*, 2014 WL 4540332, at *6 (W.D. Va. Sept. 11, 2014); *Savage*, 2010 WL 1873222, at *3; *Harter v. Vernon*, 953 F. Supp. 685, 689–90 (M.D.N.C.), *aff'd*, 101 F.3d 334 (4th Cir. 1996). The preeminence of the first *Ram Ditta* factor reflects the Supreme Court's recognition in *Hess v. Port Authority Trans-Hudson Corporation* that the Eleventh Amendment operates, at least in part, to preserve state solvency. *See* 513 U.S. 30, 51 (1994); *see Vernon*, 953 F. Supp. at 689–90. The other three *Ram Ditta* factors are less important, and include (1) whether the state entity exercises a significant degree of autonomy from the state; (2) whether it is involved with local versus state-wide concerns; and (3) how it is treated as a matter of state law. *Savage*, 2010 WL 1873222, at *3.

Ms. Omeish argues that the first *Ram Ditta* factor is dispositive in rendering Sheriff Kincaid susceptible to suit under Section 1983 in her official capacity because "the state treasury would not be liable for a judgment against [the Sheriff]" and "there is nothing in Virginia law

that would require the state or the treasury to pay any judgments against [Sheriff] Kincaid." Dkt. 37, at 7 (citing Va. Code § 15.2-1609.7). She is wrong.

A Sheriff is a constitutional officer in the Commonwealth of Virginia and is an "arm of the State" for purposes of the Eleventh Amendment. *See* Va. Const. Art. VII § 4; Va. Code. Ann. § 15.2-1609; *Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013), *as amended* (Sept. 23, 2013). The Commonwealth regulates the compensation, training, certification, and uniform requirements of Virginia Sheriffs and their deputies. Va. Code § 15.2-1609.2, *id.* §§ 1610-1612.1. It also controls Sheriffs' powers to appoint deputies, *id.* § 15.2-1603; *id.* § 1609.1, and requires specific financial accounting for expenses incurred by Sheriffs, *id.* § 15.2-1609.4; *id.* § 1615. Finally, and most importantly under the *Ram Ditta* test, any judgment against the Sheriff in her official capacity would be satisfied with funds provided by the state treasury because "Virginia Sheriffs, like other constitutional officers, are covered by a risk management plan funded by the state." *See Cadmus v. Williamson*, 2016 WL 1047087, at *6 (W.D. Va. Mar. 10, 2016) (citing Va. Code. § 2.2-1839); *cf. Brown v. Caldwell*, 2014 WL 4540332, at *6 (W.D. Va. Sept. 11, 2014) (similar); *Plaster v. Brown*, 2005 WL 3021961, at *3 (W.D. Va. Nov. 8, 2005) (similar). The Fourth Circuit makes this clear. *See Bland*, 730 F.3d at 391 ("[T]o the extent that the claims seek monetary relief against the [Virginia] Sheriff in his official capacity, the district court correctly ruled that the Sheriff is entitled to Eleventh Amendment immunity."); *see, e.g., Cadmus*, 2016 WL 1047087, at *6; *Bell v. City of Roanoke Sheriff's Office*, 2009 WL 5083459, at *2 (W.D. Va. Dec. 23, 2009); *Estate of Harvey v. Roanoke City Sheriff's Office*, 2007 WL 602091, at *3 (W.D. Va. Feb. 23, 2007); *Harris v. Hayter*, 970 F. Supp. 500, 502 (W.D. Va. 1997); *Keathley v. Vitale*, 866 F. Supp. 272, 276 (E.D. Va. 1994); *Sherman v. City of Richmond*,

543 F. Supp. 447, 449 (E.D. Va. 1982). Controlling precedent resolves Count I in favor of Sheriff Kincaid.

### ii. RLUIPA

Because Sheriff Kincaid wields Eleventh Amendment sovereign immunity, Ms. Omeish may not recover monetary damages from her under RLUIPA. *See Madison v. Virginia*, 474 F.3d 118, 129–32 (4th Cir. 2006). Ms. Omeish sues Sheriff Kincaid using "the Spending Clause's jurisdictional hook of RLUIPA." Dkt. 37, at 17 n.3; *see also* 42 U.S.C. § 2000cc-1(b)(1). "[W]hen RLUIPA is invoked in this context, plaintiffs may not pursue claims for money damages against state officials . . . ." *Gentry v. Robinson*, 837 F. App'x 952, 957 (4th Cir. 2020) (citing *Sossamon v. Texas*, 563 U.S. 277, 278–88 (2011)).

Nonetheless, prospective injunctive relief may be available to Ms. Omeish. *See Sossamon*, 563 U.S. at 288; *Madison*, 474 F.3d at 130–31 ("Because 'appropriate relief' ordinarily includes injunctive and declaratory relief, Madison's claims for equitable relief are not barred by the Eleventh Amendment.") (citations omitted). Under Section 3 of RLUIPA, governments, including state, county, and municipal entities, *see* 42 U.S.C. § 2000cc-5(4)(A), may not:

> impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person –
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

*Id.* § 2000cc-1(a).[1] A "substantial burden" is

---

[1] When it comes to prospective injunctive relief, Section 3 of RLUIPA generally affords litigants challenging law enforcement practices *greater* protections than the Free Exercise Clause, which merely requires state officials to reasonably accommodate a confined individual's sincere religious beliefs and practices consistent with the state's countervailing interests. *Cf. Greenhill v. Clarke*, 944 F.3d 243, 253 (4th Cir. 2019) (citing *Holt v. Hobbs*, 574 U.S. 352, 357 (2015)) ("[T]he First Amendment does not provide as great a protection for inmates' religious exercise as does RLUIPA.").

7

> one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the precepts of [his] religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of [his] religion on the other hand.

*Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (citing *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981)). If a violation of Section 3 of RLUIPA is ongoing, prospective relief may issue.

Ms. Omeish appears to seek comparatively narrow injunctive relief in her opposition vis-à-vis her amended complaint. *Compare* Dkt. 24, at 16 ¶ 93 (seeking, *inter alia*, "[a]n injunction ordering Defendant Kincaid to amend SOP 533 and implement a policy change prohibiting Defendants from taking booking photographs of Muslim women without their hijab."), *with* Dkt. 37, at 11–13 ("Omeish is at the minimum seeking prospective relief against both Defendants in the form of destruction of the unlawfully-obtained photograph"). This perhaps owes to her recognition that she does not have standing to challenge SOP 553 under RLUIPA given the remote possibility of her rearrest. *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Tellingly, Ms. Omeish nowhere references SOP 533 when discussing her "standing to request declaratory and injunctive relief." *See* Dkt. 37, at 13–14. However, assuming she has not abandoned this requested relief, it is moot. *Cf. Haendel v. Clark*, 2018 WL 4473118, at *2 (W.D. Va. Sept. 18, 2018) (citing *Lyons*, 461 U.S. at 105–08) ("The possibility that Plaintiff may re-enter the VDOC is too speculative to find a justiciable claim for injunctive or declaratory relief [under RLUIPA]."); *Reese v. Jacobs*, 2020 WL 1269786, at *3 (E.D. Va. Mar. 16, 2020) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007)) (similar); *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (similar).

Ms. Omeish also seeks a prospective injunction compelling the removal and destruction of the disputed images from CCIS and wherever else they exist. She has standing to seek this relief. The availability of her images to law enforcement agencies and the public constitutes "an ongoing harm" from which she is suffering. *See* Dkt. 37, at 13; *cf. Ellis v. Lassiter*, 2021 WL 2103127, at *2 (4th Cir. May 25, 2021). A prospective injunction would redress this injury, which was caused by Defendants' alleged conduct.

With Article III's "irreducible minimum" satisfied, the Court finds that Ms. Omeish sufficiently states a claim for a prospective injunction under RLUIPA. She was confined at the Fairfax County ADC. *Compare* 42 U.S. Code § 2000cc–1, *with* Dkt. 24, at 11, ¶ 60. The ongoing availability of her images constitutes a substantial burden on her religious tenets. *See Lovelace*, 472 F.3d at 187. Moreover, she plausibly asserts that the availability of her images is not the least restrictive means of furthering the state's compelling interest in public safety. 42 U.S.C. § 2000cc-1(a); *see Lovelace*, 472 F.3d at 190 (citing *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005)). She specifically highlights policies in other jurisdictions that "allow Muslim women to maintain their hijab while being photographed" during booking. Dkt. 24, at 12, ¶ 71. This is enough to survive the pleadings stage.[2] *See Carter v. Myers*, 2017 WL 8897155, at *9 (D.S.C. July 5, 2017), *report and recommendation adopted*, 2017 WL 3498878 (Aug. 15, 2017).

\* \* \*

In sum, Sheriff Kincaid's motion to dismiss is granted, except with respect to the prospective injunctive relief Ms. Omeish seeks in the destruction of her images.

---

[2] Ms. Omeish dismisses Sheriff Kincaid's argument against a *preliminary* injunction in her opposition brief. Dkt. 37, at 13 n.2 ("Omeish has not sought preliminary relief in this case."). This statement is incorrect. Ms. Omeish did seek preliminary relief in her First Amended Complaint. *See* Dkt. 24, at 13, ¶ 74 ("Plaintiff respectfully requests this Honorable Court to enter . . . *preliminary injunctive relief followed by a permanent injunction*.") (emphasis added); *see also id.* at 14, ¶ 82 (same); *id.* at 16, ¶ 92 (same). The Court will assume this request was errant.

### b. Chief Rohrer

#### i. 42 U.S.C. § 1983

As an agent of Fairfax County, Chief Rohrer may be held liable in his official capacity for constitutional violations under Section 1983. *See Monell*, 436 U.S. at 701. However, Ms. Omeish's claim against Chief Rohrer fails to plausibly state a claim for relief upon which relief can be granted. Her assertions linking Chief Rohrer and the FCPD to the administration of SOP 533 are the type of conclusory allegations that *Twombly-Iqbal* disallows under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678–79.

There are four potential bases to hold Chief Rohrer liable in his official capacity under Section 1983:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). None of these bases are plausibly alleged. Ms. Omeish's allegations pertaining to Chief Rohrer's Section 1983 liability essentially reach for a strained application of *respondeat superior* based on Officer Patrick's conduct. She alleges the following:

- "Later on, as Defendant Kincaid's agents processed Ms. Omeish, Defendant Kincaid's agents and Defendant Patrick instructed Ms. Omeish to stand in a square and ordered her to remove her hijab." Dkt. 24, at 9, ¶ 47.

- "As Defendant Kincaid's agents and Patrick were enacting [Sheriff Kincaid's] policy, Ms. Omeish explained the significance of her religious head covering and how removing it publicly would violate her faith. But Defendant Rohrer's officer and Defendant Kincaid's agents ignored her pleas and both, at different times, ordered her to remove her hijab." *Id.* ¶ 49.

- "Defendant Kincaid, by and through her agents, in concert with Defendant Patrick who was acting as Defendant Rohrer's agent, and in accordance with Defendant Kincaid's policies and practices including SOP 533, photographed Ms. Omeish without her hijab and retained this photo." *Id.* at 10, ¶ 57.

10

- "Ms. Omeish's image without her hijab is still in Defendant Kincaid's and Defendant Rohrer's possession." *Id.* at 11, ¶ 59.
- "Defendant Kincaid and her employees and agents, including Defendant Patrick who acted in concert to inflict the violation, prohibited Ms. Omeish from wearing her religious headscarf pursuant to the Sheriff's Office custom, practice, and official policy." *Id.* ¶ 61.

None of these allegations support imposing Section 1983 liability on Chief Rohrer in his official capacity. Ms. Omeish concedes that SOP 533 was issued by Sheriff Kincaid, and that it is not a FCPD policy. Dkt. 24, at 9, ¶ 48; *see also id.* at 10, ¶ 54. Ms. Omeish's verbal framing of Officer Patrick's participation in her photographing as an "enactment" of SOP 533, Dkt. 24, at 9, ¶ 49, does not impute that Policy to the FCPD or Chief Rohrer. *Contra Lytle*, 326 F.3d at 471. Additionally, no facts are alleged that plausibly support a "failure to train" or "deliberative indifference" liability theory as to Chief Rohrer. *Id.* Finally, Ms. Omeish's unsubstantiated assertion that Chief Rohrer allowed his agents "to participate and assist in an unconstitutional policy, reflecting his own policy of participation" cannot suffice to hold him liable. *See* Dkt. 37, at 5–6. The Fourth Circuit has time and again reaffirmed the separation of responsibility over policies enacted by Sheriffs and those enacted by County Police Departments in Virginia. *See, e.g., Grayson v. Peed*, 195 F.3d 692, 697–98 (4th Cir. 1999) (citing *Strickler v. Waters*, 989 F.2d 1375, 1390 (4th Cir. 1993)). Chief Rohrer's role, as alleged, is simply too attenuated to Sheriff Kincaid's SOP 533 policy to give rise to his liability.

### ii. RLUIPA

Because the Court already found Ms. Omeish's request for prospective injunctive relief proper under RLUIPA, it need not reconsider this issue. Instead, it turns its attention to whether Ms. Omeish can obtain RLUIPA monetary damages from Chief Rohrer in his official capacity as Chief of the FCPD, a municipal entity not shrouded in Eleventh Amendment sovereign immunity and subject to suit under Section 1983. *See Monell*, 436 U.S. at 690 n.54.

11

Ms. Omeish appears to seek monetary damages for Chief Rohrer's role in (1) the administration of SOP 533 during her booking, and (2) the ongoing availability of her images.

Regarding Chief Rohrer's role in the administration of SOP 533, as discussed, the weight of legal authority and the facts alleged indicate that the FCPD is not responsible for the booking processes at Fairfax County ADC. *See, e.g., Grayson*, 195 F.3d at 697–98; *Scott v. City of Va. Beach*, 2011 WL 11004246, at *4 (E.D. Va. 2011). Moreover, even if Chief Rohrer did supervise the Fairfax County ADC's operations, *Lovelace* instructs that RLUIPA liability attaches only to those officials who "issue [a] challenged policy." 472 F.3d at 193. Sheriff Kincaid issued SOP 533, not Chief Rohrer. Dkt. 24, at 9, ¶ 48; *id.* at 10, ¶ 54.

Regarding Ms. Omeish's apparent request for monetary damages from Chief Rohrer based on the ongoing availability of her images in the CCIS system, she again identifies the wrong culprit. Her pleading makes clear that "[Sheriff] Kincaid, by and through her agents and in accordance with [Sheriff] Kincaid's policies and practices, uploaded [Ms. Omeish's] picture to [CCIS, which is] owned and operated by Virginia State Policy ('VSP') [sic]." Dkt. 24, at 10–11, ¶ 58. As such, Ms. Omeish cannot reasonably contend that Chief Rohrer bears responsibility for the ongoing harm that Ms. Omeish suffers. The connection between Chief Rohrer and the availability of her image on CCIS is simply too attenuated.

Finally, the Court notes that Ms. Omeish's RLUIPA claim for monetary damages against Chief Rohrer fails for the simple reason that these damages are not available under the Act. *See Ellis v. Lassiter*, 2021 WL 2103127, at *2 (4th Cir. May 25, 2021) ("Moreover, compensatory damages are not available under RLUIPA."); *Rendelman v. Rouse*, 569 F.3d 182, 184 (4th Cir. 2009) ("With respect to damages, we have held previously that RLUIPA does not authorize a claim for money damages against an official sued in her official capacity."); *Allah v. Kiser*, 2021

WL 1207730, at *6 (W.D. Va. Mar. 30, 2021) ("As an initial matter, a prisoner bringing a cause of action under RLUIPA is not entitled to money damages against state defendants in either their individual or official capacities."); *Counts v. Robinson*, 2021 WL 230223, at *3 (E.D. Va. Jan. 22, 2021) ("RLUIPA does not provide for monetary damages against defendants in their official or individual capacities."); *Leggett v. Solomon*, 2019 WL 4670742, at *4 (E.D.N.C. Sept. 24, 2019) ("RLUIPA, however, does not provide for a private cause of action for damages against prison officials in either their official or individual capacities."); *Hicks v. Pixley*, 2019 WL 4576269, at *2 n.2 (E.D. Va. Sept. 20, 2019) ("To the extent Hicks seeks monetary damages for his RLUIPA claims, the Fourth Circuit does not recognize such relief under RLUIPA."), *aff'd*, 797 F. App'x 131 (4th Cir. 2020); *Firewalker-Fields v. Lee*, 2018 WL 4571877, at *3 (W.D. Va. Sept. 24, 2018) ("Damages are not an available remedy under RLUIPA"); *Haendel*, 2018 WL 4473118, at *2 ("Damages are not an available remedy under RLUIPA . . . ."); *Coleman v. Jabe*, 2012 WL 7801722, at *2 (W.D. Va. Dec. 26, 2012); *Lee v. Gurney*, 2010 WL 5113782, at *10 (E.D. Va. Dec. 9, 2010).

Ms. Omeish identifies one in-Circuit opinion to detract from this consensus: *Carter v. Myers*. Dkt. 37, at 9 n.1 (citing 2017 WL 8897155, at *6 (citing *Madison*, 474 F.3d at 133)), *report and recommendation adopted*, 2017 WL 3498878 (D.S.C. Aug. 15, 2017)). *Carter* is unpersuasive, as are the other out-of-Circuit opinions she cites.

<u>First</u>, RLUIPA, unlike Section 1983, is a direct source of substantive law.[3] It applies in plain terms to the "government," which the Act defines as any "[s]tate, county, municipality, or other governmental entity created under the authority of a State." 42 U.S.C. § 2000cc–5(4)(A).

---

[3] *See Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)) ("[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'").

RLUIPA authorizes "appropriate relief against a government," *id.* § 2000cc-2(a) (emphasis added), which encompasses "injunctive relief and declaratory relief." *See Madison*, 474 F.3d at 130–31. However, the Act's text implies that monetary damages are unavailable. *See Madison*, 474 F.3d at 131 ("The statute makes no reference to monetary relief. . . . [A]lthough 'appropriate relief' might be read to include damages in some contexts, it is at least equally plausible that, in other contexts, the term might be read to preclude them."). Treating all "government" entities listed in Section 2000cc-5(4)(A) identically gives effect to RLUIPA's "every clause and word." *United States v. Simms*, 914 F.3d 229, 241 (4th Cir.) (en banc) (citing *United States v. Menasche*, 348 U.S. 528, 538–39 (1955)).

<u>Second</u>, even though RLUIPA monetary damages are frequently barred by state sovereign immunity under the Eleventh Amendment, *see, e.g.*, *Madison*, 474 F.3d at 133, the Act's source of authority, as invoked by Ms. Omeish, immunizes even local officials from money damages. That is because Ms. Omeish brings her claim pursuant to 42 U.S.C. § 2000cc-1(b)(1), which hinges on the Spending Clause. *See* Dkt. 378, at 17 n.3. This jurisdictional basis requires Congress to affirmatively authorize a cause of action for money damages in legislation when that legislation operates to control the behavior of state and local officials. *See Coleman v. Jabe*, 2012 WL 7801722, at *2 (W.D. Va. Dec. 26, 2012). The Fourth Circuit's opinion in *Rendelman v. Rouse*, a RLUIPA case involving a suit brought against several prison officials in their individual capacities, is instructive:

> When Congress desires to impose a condition under the spending clause, it is Congress' burden to affirmatively impose the condition in clear and unmistakable statutory terms. We conclude therefore that in simply defining 'government' in § 2000cc–2 . . . Congress did not signal with sufficient clarity an intent to subject such a person to an individual capacity damages claim under RLUIPA. . . . States cannot, of course, knowingly accept conditions of which they are unaware or cannot reasonably ascertain. . . . Hence, Rendelman cannot rely on RLUIPA's spending clause basis to pursue his claim . . . .

569 F.3d 182, 189 (4th Cir. 2009) (cleaned up). In other words, RLUIPA contains no unequivocal indication that Fairfax County's acceptance of federal funds exposes it to the risk of monetary damages under RLUIPA, so those damages are unavailable to Ms. Omeish. *See id.*; *see also Jabe*, 2012 WL 7801722, at *2 (observing that RLUIPA shrouds Defendants in "absolute immunity" from money damages, rather than mere "sovereign immunity")

\* \* \*

In sum, FCPD Chief Rohrer cannot be held liable under Section 1983 or RLUIPA for Sheriff Kincaid's SOP 533 policy or the ongoing availability of Ms. Omeish's images in CCIS.

## IV. CONCLUSION

Sheriff Kincaid's motion to dismiss (Dkt. 27) is **GRANTED IN PART**, and Chief Rohrer's motion to dismiss (Dkt. 32) is **GRANTED**. Sheriff Kincaid is **DIRECTED** to file an answer within twenty-one (21) days of the date of this Order.

It is **SO ORDERED**.

June 15, 2021
Alexandria, Virginia

Liam O'Grady
United States District Judge