```
                    UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA


     ABRAR OMEISH,                    :
                                      :
                 Plaintiff,           :   Civil Action
                                      :   No. 1:21-cv-0035
            v.                        :
                                      :
     SHERIFF STACEY ANN KINCAID,      :   February 18, 2022
                                      :   10:25 a.m.
                 et al.,              :
                                      :
                                      :
                 Defendants.          :
                                      :
     ..............................
```


**TRANSCRIPT OF IVAN MOTION HEARING PROCEEDINGS**
**BEFORE THE HONORABLE IVAN D. DAVIS,**
**UNITED STATES DISTRICT COURT MAGISTRATE JUDGE**


APPEARANCES:

For the Plaintiff:          **Justin Mark Sadowsky, Trial**
                            **Attorney**
                            Council on American Islamic
                            Relations
                            453 New Jersey Avenue, SE
                            Washington, DC 20003
                            202-488-8787
                            Fax: 202-488-0833
                            Email: Jsadowsky@cair.com


For the Defendant:          **Alexander Francuzenko, Esq.**
                            Cook Craig & Francuzenko PLLC
                            3050 Chain Bridge Road
                            Suite 200
                            Fairfax, VA 22030
                            703-865-7480
                            Fax: 703-434-3510
                            Email: Alex@cookcraig.com

APPEARANCES:   (Cont


Court Reporter:                **Scott L. Wallace, RDR, RMR, CRR**
                              Official Court Reporter
                              United States District Court
                              401 Courthouse Square
                              Alexandria, VA  2231-5798
                              Office: 703.549.4626
                              Cell: 202.277.3739
                              Email: Scottwallace.edva@gmail.com


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

1       <u>**MORNING SESSION, FEBRUARY 18, 2022**</u>

2   (5:24 p.m.)

3       THE COURTROOM CLERK:  Civil Action Number 21-cv-35,

4   Omeish versus Stacey Kincaid, et al.

5       Would counsel please come to the podium and state your

6   name for the record.

7       MR. SADOWSKY:  Your Honor, Justin Sadowsky representing

8   Plaintiff Omeish.

9       THE COURT:  Good morning.

10      MR. FRANCUZENKO:  Good morning, Your Honor.  Alex

11  Frankuzenko on behalf of Sheriff Stacey Kincaid.

12      THE COURT:  Good morning.  This matter is before the Court

13  on Defendant Kincaid's motion for a protective order.  The Court

14  has had an opportunity to review the motion and memorandum in

15  support, the opposition to the motion, and it appears to the

16  Court that there was no reply to that opposition, or at least the

17  Court is not in possession of one; is that correct?

18      MR. FRANCUZENKO:  Your Honor, we filed a reply Wednesday.

19  It's --

20      THE COURT:  Okay.  All right.

21      MR. FRANCUZENKO:  I can give you the ECF number.

22      THE COURT:  No, I'm sure you'll adequately address that as

23  you stand at the podium.  So, is there anything that you would

24  like to add to your motion at this time?

25      MR. FRANCUZENKO:  Your Honor, not much, other than we

1    really are focusing on Judge O'Grady's order, and we believe that

2    is the law in the case.  If you read Judge O'Grady's order

3    carefully, the only, only issue related to Sheriff Kincaid is the

4    destruction of the pictures.  How other inmates are treated, how

5    grievances are made by other inmates, other similarly situated

6    individuals, Muslim women, how their pictures and so forth are

7    addressed have absolutely nothing to do with the destruction of

8    her pictures, plain and simple.

9         The relevant discovery which I would have expected as to

10   who -- you know, where those pictures are, who has actual custody

11   of those pictures, whether they even still even exist in any

12   systems, that -- that type of discovery wasn't even requested.

13   The discovery that was sent out, the ones that are before the

14   Court, the ones that we've objected to, would have been

15   appropriate, some of it -- we probably would still be here on the

16   broadness of it -- would have existed if there still were viable

17   claims related to the policy itself and potentially monetary

18   claims.  Here we are on a very, very, very narrow platform, and

19   we still -- we're willing to produce the documents we've

20   identified in the initial disclosures because they deal

21   specifically with Ms. Omeish.

22        It's beyond me how 98 percent of the requests that are

23   being asserted here, whether it's through interrogatories or

24   requests for documents, are in anyway proportionate to the

25   remaining claim, and we think it would be unfair and go well

```
1    beyond what Judge O'Grady has ruled on in this case to permit

2    discovery of that nature.

3           THE COURT:  All right.  Counsel.

4           MR. SADOWSKY:  Your Honor, Judge O'Grady found that the

5    only remedy that we have in this case is destruction of the

6    photograph, but there's no cause of action for destruction of

7    photograph.  In order to get the remedy of the destruction of the

8    photograph, we would need to prove the causes of action in our

9    complaint, most particularly the RLUIPA cause.

10          If you look at page 7 of Judge O'Grady's order, he says,

11   {indiscernible} prospective relief under RLUIPA.  The RLUIPA test

12   is, under Hope v. Hobbs, is that if a plaintiff can establish

13   that they have a sincere religious belief and that the government

14   has violated that sincere religious belief in the incarceration

15   context, then the government -- then the defendant -- the

16   defendant's actions violated it, unless they can show that their

17   policy that violated the belief is the lease restrictive means of

18   accomplishing an important government interest.

19          And in the reply brief, I know you haven't had a chance to

20   read it, the government -- the -- you know, they claim that

21   there's no RLUIPA claim in it, which I think is contrary to page

22   7 of the motion to dismiss decision, but, you know, they say very

23   clearly, "The requirements of SOP 533 show the lease restrictive

24   means possible is already utilized."  They understand that

25   whether SOP 533 is permissible in light of the religious beliefs
```

1   of Abrar Omeish is the central question as to whether there's a

2   violation, which is what we would need to show in order to get

3   our remedy, and --

4      THE COURT:  And how does the requested discovery go to

5   show that?

6      MR. SADOWSKY:  So I can go through this.  This is normally

7   what we would do in a meet and confer, which I think would be the

8   normal approach to objecting to discovery requests instead of

9   objecting to, say, discovery -- so, asking for a protective

10  order, among other things, for all evidence that --

11     THE COURT:  So it's your representation to this Court that

12  no meet and confer occurred?

13     MR. SADOWSKY:  The only meet and confer that occurred in

14  this case is they asked us if we consented to a protective order.

15  I mean -- I mean against our discovery requests, and obviously we

16  did not consent to that.

17     THE COURT:  Let's resolve that issue first, because the

18  Court doesn't have to go much further if that did not occur.

19     MR. SADOWSKY:  At least that's all -- that's all I'm aware

20  of.  I'm not the only lawyer on my team.

21     THE COURT:  Mr. Francuzenko.

22     MR. FRANCUZENKO:  Your Honor, first of all, that should

23  have been raised in the opposition.

24     THE COURT:  Whether it should or should not, the rule is

25  clear.

```
 1          MR. FRANCUZENKO:  I agree.

 2          THE COURT:  A good faith attempt to resolve the matter

 3     must occur before the motion is filed.

 4          MR. FRANCUZENKO:  No question about it, and I've been

 5     before this Court and before Your Honor, and I am aware of that.

 6     I made -- I sent e-mails, and I had a telephone conversation with

 7     lead counsel in Chicago, and we did have a meet and confer on

 8     these issues, and he declined to withdraw or limit the discovery

 9     requests.  It wasn't with this counsel, but it was with lead

10     counsel.

11          THE COURT:  So be it.

12          MR. FRANCUZENKO:  And I've got phone records, if there's a

13     question.

14          THE COURT:  The Court will accept counsel's proffer.

15          MR. SADOWSKY:  All right.  Putting that aside, that was

16     not -- again, the lead -- we focused on this.  At least -- so,

17     so -- and I do want to move on to the details, but some of the

18     requests that they've refused to produce and seek a protective

19     order are -- I want to get these right.  I don't want to make any

20     mistakes -- a copy -- any and all documents defendants possess

21     which support defendant's defenses, whether affirmative or not, a

22     copy of all policies, procedures or directives which the

23     defendants consider relevant to any of their affirmative

24     defenses, a copy of any and all exhibits the defendants may

25     introduce at summary judgment or trial, and all documents
```

1    identified, reviewed, used --

2         THE COURT:  Well, let's start with that last one.  This

3    was in a discovery request.

4         MR. SADOWSKY:  Yes.

5         THE COURT:  Is it your understanding that typically

6    counsel, in responding to discovery, know all the documents

7    they're going to introduce at trial?

8         MR. SADOWSKY:  Usually there's an expectation -- these are

9    standard -- I think I copy-pasted these from --

10        THE COURT:  Well, that may be your problem.  People do

11   things wrong all the time.  That's why this building stands.

12        MR. SADOWSKY:  Well, let me explain it.  It's at least

13   typical, and I think -- and I think this is what --

14        THE COURT:  No, actually it's not very typical when --

15   {Simultaneous conversation indiscernible.}

16        MR. SADOWSKY:  -- okay -- {Simultaneous conversation

17   indiscernible.}

18        THE COURT:  When it is typical, it's not correct.

19   Generally speaking, in this Court's experience, as soon as you

20   use the terms "any and all," you're running into a problem with

21   opposing counsel already jumping up and screaming overly broad.

22   That's in this Court's experience.

23        MR. SADOWSKY:  I think it is correct that at least -- that

24   defendant -- a party is expected to produce in discovery all

25   evidence that supports their claims or defenses.

1          {Simultaneous conversation indiscernible.}

2          THE COURT:  He didn't say a hundred percent of your

3    discovery requests were objectionable.

4          MR. SADOWSKY:  But he objected to that request and said if

5    we didn't withdraw it, he intends to unseek a protective order.

6          THE COURT:  Well, let's figure out why.

7          MR. SADOWSKY:  So then let's --

8          THE COURT:  No, no, no, no.  Let's figure out why.

9          Mr. Francuzenko, that's a pretty standard request.  I

10   mean, you are required to provide information that supports your

11   claims.

12         MR. FRANCUZENKO:  You're right, and that's what we've

13   done.  We've said that --

14         THE COURT:  -- then why is he reading an objection?

15         MR. FRANCUZENKO:  Well, the objection on the trial

16   exhibits, yeah, Your Honor.  First of all, the previous case is

17   reflective of that.

18         THE COURT:  Oh, this is not an objection to your

19   discovery.

20         MR. FRANCUZENKO:  The trial -- the trial exhibits will be

21   identified pursuant to --

22         THE COURT:  No, no, no, no, we're here for a motion for

23   protective order because they're seeking certain things in

24   discovery.

25         MR. FRANCUZENKO:  Right.

```
1        THE COURT:  It's the Court's understanding that you've

2   objected to their discovery requests.

3        MR. FRANCUZENKO:  I've done two things.  I've filed timely

4   objections within 15 days pursuant to the Court's local rules,

5   and when we could not work out any kind of reasonable production,

6   we filed a motion for protective order, and --

7        THE COURT:  Well, let's just deal with that particular

8   request.

9        MR. FRANCUZENKO:  Trial exhibits?

10       THE COURT:  No, not trial exhibits.  He didn't say trial

11  exhibits, he said evidence that supports your claims and

12  defenses.

13       MR. FRANCUZENKO:  And that's --

14       THE COURT:  -- and he said you objected.

15       MR. FRANCUZENKO:  We did --

16       THE COURT:  How did you object to that.

17       MR. FRANCUZENKO:  We objected, but we also said that we

18  will produce everything that we've identified in our initial

19  disclosures.

20       THE COURT:  We're not very fond of those types of

21  objections, and that's been made quite clear in some bench bar

22  CLEs because the other side -- that's how we end up here, because

23  the other side doesn't know what -- are you standing on your

24  objections to any of these things, or are you producing

25  everything?  Because you have to very carefully, then, word your
```

1    response to the discovery requests.

2          MR. FRANCUZENKO:  I understand.

3          THE COURT:  Because they're left up in the air on whether

4    you produced or not, so actually how did you -- what was your

5    specific response to that request?

6          MR. FRANCUZENKO:  I'm not clear right now which request

7    the Court is asking, because he just shot off three of them.

8          THE COURT:  Any and all information or documents that you

9    intend to use to support your claims or defenses.

10          MR. FRANCUZENKO:  Okay.  So with regard to that, we

11    objected because it was too broad as far --

12          THE COURT:  On what basis?

13          MR. FRANCUZENKO:  Any and all.

14          THE COURT:  Well, that's one of the ones that generally

15    may not be, because the whole category is general --

16          MR. FRANCUZENKO:  -- right --

17          THE COURT:  -- that supports your claims or defenses.

18          MR. FRANCUZENKO:  Right.  So --

19          THE COURT:  Only you know what documents would support

20    your claims or defenses, so actually the request is kind of

21    narrowing things because it's not requesting any and all

22    documents, only any and all documents that support your claims.

23          MR. FRANCUZENKO:  So, with regard to that specific

24    request, Your Honor, we would at this time say that all of the

25    documents that have been identified in our initial disclosures

1    would be the ones that we would rely on.

2         And we made that clear in terms of when I had the

3    discussion with lead counsel on that particular point.

4    {Simultaneous conversation indiscernible.}

5         MR. FRANCUZENKO:  We could not reach an agreement.

6         THE COURT:  {Indiscernible} reference, if that was the

7    written response, we could avoid this particular portion of the

8    conversation in a motions hearing.

9         MR. FRANCUZENKO:  Understood, and I'll try to be more

10   clear in my objection and then file the appropriate response.

11        THE COURT:  Okay.  So you mentioned -- he mentioned three,

12   and so that was one.  That seems to be dealt with.

13        MR. FRANCUZENKO:  Well, the trial exhibits I have a

14   problem with because -- and I've dealt with this in other cases

15   as well.  I can give -- I can identify documents that may be used

16   as trial exhibits at trial, but until we get to the pretrial and

17   we actually identify exhibits, strategy, motions, other things

18   may occur which --

19        THE COURT:  -- I completely concur.  It was an inartfully

20   worded request, but we don't file motions and things because of

21   inartful wording, we try to work it out.

22        MR. FRANCUZENKO:  I agree with that.

23        THE COURT:  I mean, you said you worked the other one out

24   with lead counsel, so this one for lead counsel, did you express

25   your concern about the request for trial exhibits with lead

1    counsel?  And if so, what was his response?

2        MR. FRANCUZENKO:  Your Honor, it was mentioned, but we

3    never got a resolution to that.

4        THE COURT:  You see, you're supposed to try to get the

5    resolution before we include it in the motion for the protective

6    order.

7        MR. FRANCUZENKO:  Understood.  The focus of this motion

8    really is on the other request, not particularly that one, and

9    again, our opposition and everything else would indicate that by

10   producing initial disclosures -- all the documents in the initial

11   disclosures, that some of those responses would be satisfied.  We

12   got a response saying that's not going to be good enough.  So we

13   did take the assertive action of filing a motion for protective

14   order.

15       THE COURT:  So what is your response to his argument that

16   even though the relief that can be granted by the Court has been

17   narrowed by Judge O'Grady, in order to get to that relief we must

18   prove the claim upon which the relief is to be granted, and

19   therefore we need -- we have the right to discovery to assist us

20   in proving the claim that shows that we deserve that relief?

21       MR. FRANCUZENKO:  Your Honor, I have no problem with that

22   on a theoretical approach.  That's fine.  {Indiscernible}.

23       THE COURT:  {Simultaneous conversation indiscernible.}

24   believe --

25       MR. FRANCUZENKO:  -- how does someone else --

```
1         THE COURT:  Which claim do you believe he is required to
2    prove in order to seek the relief of permanent injunction?
3         MR. FRANCUZENKO:  I would leave that up to them.  That's
4    their theory of the case.
5         THE COURT:  Well, then, how can you so more narrowly
6    define what is relevant in the discovery process if we can't even
7    decide which claim they're going to be seeking the relief upon?
8    Because the claim upon which they're seeking the relief would
9    have a significant impact on the discovery they would be required
10   and/or authorized to acquire, because the relevance depends --
11   the relevance of the information sought depends on the claim that
12   is being propounded, does it not?
13        MR. FRANCUZENKO:  Your Honor -- I'm not even going to
14   relevance because I'm not sure that's the appropriate standard
15   for discovery in this particular case.
16        THE COURT:  That's the appropriate standard for all
17   discovery.
18        MR. FRANCUZENKO:  This is about what's proportionate.
19        THE COURT:  No, no.  {Simultaneous conversation
20   indiscernible.}
21        MR. FRANCUZENKO:  -- Well --
22        THE COURT:  How can I determine proportionality until I
23   determine relevance?  If there are 50,000 documents that are
24   relevant and you have not -- and they're seeking -- permanent
25   injunction is like the biggest thing.  Money can't even --
```

1          MR. FRANCUZENKO:  -- absolutely --

2          THE COURT:  Money can't even make you whole.  Money can't

3     even do it for you; $10 billion can't do it for you.  The only

4     thing you have left is the permanent injunction.

5          MR. FRANCUZENKO:  Absolutely.

6          THE COURT:  That's, like, the biggest relief there is.  So

7     what's not proportionate to that from a discovery standpoint?

8          MR. FRANCUZENKO:  I agree with you a hundred percent.  So,

9     Your Honor, the only claim is -- the form of relief is the

10    destruction of her pictures or what happens to her pictures.

11         THE COURT:  Which is an injunction?

12         MR. FRANCUZENKO:  And that's it.  So what those other

13    people's complaints about --

14         THE COURT:  -- but that's why it's important to determine

15    which claim must they prove in order to seek that relief?

16    Because you don't get to the relief until they prove the claim,

17    and so it's the discovery on the claim that is relevant.

18         MR. FRANCUZENKO:  Right, and --

19         THE COURT:  -- it's not the discovery, because you can

20    look at discovery in two ways, and sometimes people bifurcate it;

21    discovery on the culpability and discovery on damages.

22         MR. FRANCUZENKO:  And, Your Honor --

23         THE COURT:  -- and what you're talking about, seem to be

24    talking about, protect -- saying why you want to narrow the scope

25    of discovery is based on the damages that are sought, but that's

```
 1    only one portion of it.

 2         MR. FRANCUZENKO:  They kind of go hand-in-hand in a

 3    situation.

 4         THE COURT:  Yes, but they still are authorized under the

 5    rules to get discovery concerning the claim that must be proved

 6    in order to seek said damages.

 7         MR. FRANCUZENKO:  And, and, and what other people's

 8    experiences are are not --

 9         THE COURT:  -- well, I don't know because you have not

10    given me which claim they're requir--

11         MR. FRANCUZENKO:  They're the ones that are filing the

12    claim, not me.

13         THE COURT:  So if you have not had that discussion and you

14    don't know what claim they're relying upon, how do you know that

15    the information that they're seeking is disproportionate to the

16    claim itself and the damages they're seeking?

17         MR. FRANCUZENKO:  There's only two claims available to

18    them.  First -- take either one, First Amendment or the RLUIPA.

19         THE COURT:  First Amendment.

20         MR. FRANCUZENKO:  Okay.

21         THE COURT:  So First Amendment means the expression of

22    your beliefs and thoughts.

23         MR. FRANCUZENKO:  That's right.

24         THE COURT:  Okay.  And whether or not you violated those.

25         MR. FRANCUZENKO:  Right.
```

```
 1        THE COURT:  And does that claim require any possible
 2   knowledge of violation which then patterns information --
 3        MR. FRANCUZENKO:  -- {Simultaneous conversation
 4   indiscernible.} --
 5        THE COURT:  To assist to approve, and so the request of
 6   whether or not they're violating substantially -- people who are
 7   substantially similarly situated as their client can assist in
 8   proving that particular claim?
 9        MR. FRANCUZENKO:  It's not a Monnell claim, Your Honor.
10   It's either a violation or it's not.  Maintaining the picture is
11   either a violation of the RUPELA [sic] -- RLUIPA, I'm sorry -- or
12   it's not, and it's not --
13        THE COURT:  -- and all of these --
14        {Simultaneous conversation indiscernible.}
15        MR. FRANCUZENKO:  -- pattern and practice --
16   {indiscernible}.
17        THE COURT:  And all of these discussions you had with lead
18   counsel prior to the filing of this motion?
19        MR. FRANCUZENKO:  I told him point blank, what do the
20   other people have to do with your client's --
21        THE COURT:  -- and what was his explanation or his
22   response?
23        MR. FRANCUZENKO:  His explanation was -- well, he's not
24   here to give it, but --
25        {Simultaneous conversation indiscernible.}
```

1

2          THE COURT:  No, I'm asking you {indiscernible} --

3          MR. FRANCUZENKO:  My recollection is that he felt like he

4     still needed that to prove his claim.

5          THE COURT:  No, but that's not a -- then you said, Okay, I

6     can appreciate the fact that you think you need it; my question,

7     however, was, why do you -- authorized to have it based on why is

8     it relevant to prove the elements of the claim?  How was what

9     you're seeking reasonably calculated to lead to the discovery of

10    admissible evidence to prove the elements of this claim which are

11    A, B and C?

12         MR. FRANCUZENKO:  And that's -- {Simultaneous conversation

13    indiscernible.} --

14         THE COURT:  Which one of those elements does this

15    information that you seek go and assist in proving?  And once you

16    said that, he then said what?

17         MR. FRANCUZENKO:  That's the point we disagreed on.  He

18    feels like -- that the pictures or the other complaints, the

19    other similarly situated individuals was something that he needed

20    to --

21         THE COURT:  -- all right {Simultaneous conversation

22    indiscernible.} --

23         MR. FRANCUZENKO:  -- disagree with him.

24         THE COURT:  That's a good dispute.

25         MR. FRANCUZENKO:  It is.

```
 1        THE COURT:  Because the fact that you disagree doesn't
 2   mean that your position is correct.
 3        MR. FRANCUZENKO:  That's right.  That's why we're here.
 4        THE COURT:  So now that you've made your position clear,
 5   thank you very much.  Now I'll hear from opposing counsel
 6   concerning your position.
 7        MR. FRANCUZENKO:  Right.  And that's why we're here,
 8   because we disagreed with that.
 9        THE COURT:  But that was not made clear in either the
10   motion in memoranda or the opposition.  Maybe it was made in the
11   reply that I didn't get an opportunity to read.
12        MR. FRANCUZENKO:  Well, Your Honor, I, again, am going
13   back to what I believe Judge O'Grady's intent was with regard
14   to --
15        THE COURT:  -- well, there's no intent.
16        MR. FRANCUZENKO:  Of course there is.
17        {Simultaneous conversation indiscernible.}
18        THE COURT:  Judge O'Grady never intended for his ruling to
19   be used to put a restriction on the discovery that would be
20   authorized to prove the claims upon which his remaining damages
21   decision would be made.
22        MR. FRANCUZENKO:  There are no damages in injunctive
23   relief.
24        THE COURT:  That's a damage.  That's an equitable damage.
25        MR. FRANCUZENKO:  I don't see it that way.
```

```
1        THE COURT:  Well, so?  And so you and me disagree, but
2   that doesn't mean I don't have the right to get things and you
3   don't have the right to get things to prove our position, and
4   that's what he's doing.
5        {Simultaneous conversation indiscernible.}
6        MR. FRANCUZENKO:  -- but you don't {indiscernible} --
7        THE COURT:  -- to prove that he's right and you're wrong.
8        MR. FRANCUZENKO:  Well, Your Honor --
9        THE COURT:  -- if he's authorized to do that.
10       MR. FRANCUZENKO:  If it --
11       THE COURT:  -- you made your position clear.  Let me hear
12  from opposing counsel.
13       MR. FRANCUZENKO:  Thank you, Your Honor.
14       MR. SADOWSKY:  So let's talk about relevance.  I think we
15  tried to, and I apologize if we didn't do a good job, but I think
16  we tried to explain the relevance of all our claims in pages 5
17  through 9, I believe.
18       THE COURT:  I'm going to start by saying you're going to
19  have to do a little better job than you did in the written
20  submissions.
21       MR. SADOWSKY:  All right.  That's fine.  So let's start
22  with -- let's start with number 1.  All policies, procedures,
23  training materials, and communications related to religious
24  accommodations.  So under --
25       THE COURT:  Well, let me start with something similar.
```

1          MR. SADOWSKY:  Okay.

2          THE COURT:  Page 6, paragraph 1.

3          MR. SADOWSKY:  Page 6 of which document?

4          THE COURT:  Your opposition.

5          MR. SADOWSKY:  Okay.

6          THE COURT:  Paragraph 1, line 2, request number 2, for

7    example; asks for the number of female bookings defendants

8    performed in 2019.

9          MR. SADOWSKY:  Right.

10          THE COURT:  What in the world does that have to do -- how

11    does that even go to proving the elements of a claim and whether

12    someone's First Amendment rights were violated?

13          MR. SADOWSKY:  -- so --

14          THE COURT:  -- not even your client's, even those people,

15    the number of bookings.

16          MR. SADOWSKY:  So it's relevant in two ways.  One, it's

17    relevant to determine -- the number of female bookings they have

18    is relevant to determine how often that they have --

19          THE COURT:  -- that people are arrested.

20          MR. SADOWSKY:  Gender issues, right?

21          THE COURT:  No, no, no, no, no.  There are no gender

22    issues until a gender brings up a gender issue.  The majority of

23    females who were booked probably had no issues.

24          MR. SADOWSKY:  So what --

25          THE COURT:  -- so, therefore, the number of bookings is

1  not relevant, even if it is minuscule relevant, the number of

2  them searching for the entire number of bookings would definitely

3  be disproportionate to any justification or anything positive you

4  could get out of that to use.

5      MR. SADOWSKY:  So let me talk about relevance.

6      THE COURT:  It's like the probative value, like the old

7  rule, 403:  It's probative value is substantially outweighed by

8  the burden that they would have to go through, because it has

9  very little, if any, probative value at all.  That leads to the

10  definition of disproportionate.

11      MR. SADOWSKY:  Let me start with 401, and then I'll move

12  to 403 real quickly.  The 401, the relevance associated -- it's

13  relevant because we're trying to anticipate their defenses, why

14  it was narrowly tailored.  One of the defenses we're trying to

15  anticipate -- remember, they're talking about whether they

16  have --

17      THE COURT:  What do you mean, if they have?  We don't get

18  discovery based upon anticipated defenses.  Discovery is

19  information -- relevance for discovery is what's reasonably

20  calculated to lead to discovery of admissible evidence --

21      MR. SADOWSKY:  -- {indiscernible} --

22      THE COURT:  -- which is relevance, information that goes

23  to prove the elements of the claims or defenses.  That means the

24  existing claims or defenses, not anticipated claims or

25  defenses -- because depending on what lawyer you are, you could

1    pretty much anticipate anything.

2         MR. SADOWSKY:  Your Honor --

3         THE COURT:  You don't get --

4         {Simultaneous conversation indiscernible.}

5         THE COURT:  -- anything --

6         MR. SADOWSKY:  This is not an affirmative defense, so we

7    couldn't exclude the possibility of this defense.

8         THE COURT:  No, that's exactly what discovery is about.

9    You have to make a legal determination to exclude and not to

10   exclude certain things in a request; otherwise, what you're

11   saying meets the definition of a fishing expedition.  Since we

12   can't exclude anything, we're going to ask for everything.  That

13   is not how the discovery process is intended to work under the

14   Federal Rules of Civil Procedure or the local rules of this

15   Court.

16        MR. SADOWSKY:  All right.  I {indiscernible} history,

17   but --

18        THE COURT:  That claim -- this particular request the

19   Court finds irrelevant and overly broad and disproportionate.

20        MR. SADOWSKY:  All right.  I guess I will not get --

21        THE COURT:  With that particular information or armed with

22   that particular information, maybe you should take a closer look

23   at some of your other requests and maybe narrow your argument to

24   more effectively address those positions.

25        MR. SADOWSKY:  Do you want me to continue or --

1        THE COURT:  Yes, that's what I just said.

2        MR. SADOWSKY:  On this one or do you have a different one

3   you want me to continue on?

4        THE COURT:  Anything that's going to deal with numbers --

5   because I don't know all your requests --

6        {Simultaneous conversation indiscernible.}

7        MR. SADOWSKY:  -- the only --

8        THE COURT:  If you're just asking for a number, I don't

9   find one.

10       MR. SADOWSKY:  The only other thing I would say about the

11  number, just -- if they came back and told us that's not

12  something we can punch into a computer and get an answer, we

13  would have accepted that.

14       THE COURT:  But you don't have to because they don't have

15  to try.  If they don't consider it relevant, then -- at this

16  juncture this Court has ruled that we concur with them, that that

17  request is not relevant.

18       MR. SADOWSKY:  All right.

19       THE COURT:  Forget disproportionate, it's just not

20  relevant.

21       MR. SADOWSKY:  Let me start with document request 1, and I

22  could go through -- we can go through each one.  All policies,

23  procedures, training materials, and communications related to

24  religious accommodations.

25       And so under {indiscernible} --

1

2      THE COURT:  And what particular -- all religious

3  accommodations are involved in this case?

4      MR. SADOWSKY:  We're talking about --

5      THE COURT:  No, no, no.  Answer the question.  Are all

6  religious accommodations involved in this case?

7      MR. SADOWSKY:  We're talking in general about a religious

8  accommodation.

9      THE COURT:  We don't do generalities in discovery.  The

10  purpose of discovery is to narrow the issues at trial.

11      MR. SADOWSKY:  We're talking specifically about a

12  religious accommodations that --

13      THE COURT:  -- which particular religious -- are all

14  religious accommodations part of this trial?  If not, then you

15  should be looking for policies and things that address the

16  particular religious accommodation that was requested by your

17  client.

18      MR. SADOWSKY:  We've done this a number of times, and I

19  just --

20      THE COURT:  -- I don't care how many times.

21      {Simultaneous conversation indiscernible.}

22      MR. SADOWSKY:  {Indiscernible} and it's never a Christian

23  religious accommodation policy or a Jewish religious

24  accommodation policy, it's --

25      THE COURT:  -- there are different types of accommodations

1    even within a religion.

2          MR. SADOWSKY:  Yes, but there's typically a religious --

3          {Simultaneous conversation indiscernible.}

4          THE COURT:  {Indiscernible} certain flings that the Muslim

5    religion -- there are certain things -- the removal of facial

6    hair is an issue.

7          MR. SADOWSKY:  Yes, but we're --

8          THE COURT:  -- another religious accommodation of the same

9    religion --

10         MR. SADOWSKY:  -- but --

11         THE COURT:  -- is to be able to pray facing east in

12   certain parts of the day.  So even the same religion may have

13   different requests and accommodations.  What you get in discovery

14   may be -- are policies and procedures that affect and/or address

15   the particular religious accommodation that's involved in the

16   claims and defenses in this particular case.

17         MR. SADOWSKY:  Sure, and we are not -- and we're never

18   intending to look for a beard policy.

19         THE COURT:  But that's what your request says, any and all

20   policies and procedures that address religious accommodations.

21   That's your request, which means your request is overly broad.

22         MR. SADOWSKY:  Religious accommodations, in our view, is a

23   policy.  That's how -- there is a federal religious

24   accommodations policy.  There is a {indiscernible} --

25         THE COURT:  -- well, you would be incorrect.

1      MR. SADOWSKY:  What?

2      THE COURT:  That is not how someone could perceive or

3  interpret that request.

4      MR. SADOWSKY:  If it was misunder- --

5      {Simultaneous conversation indiscernible.}

6      THE COURT:  -- policies that address particular requested

7  accommodations.  And you're asking for every single policy that

8  they have that addresses any religious accommodation, even though

9  any religious accommodation is not involved in this claim.

10      MR. SADOWSKY:  All I can say is we did not intend that, to

11  be asking that.

12      THE COURT:  I know you didn't intend it, but if you are

13  listening, what the Court is saying is that you need to more

14  narrowly and more artfully phrase your requests.

15      This right now, what we're doing is the conversation that

16  should have occurred between yourself and/or your lead counsel

17  and opposing counsel in the good faith meet and confer that's

18  required by the local rules of this court.

19      MR. SADOWSKY:  I absolutely agree with that.

20      THE COURT:  Well, then, here's a simple solution.  The

21  Court will continue this matter until next Friday, and you go do

22  what you should have done before the motion was filed.

23      MR. SADOWSKY:  All right.

24      MR. FRANCUZENKO:  Your Honor, you can lead the horse to

25  water, but you can't make them drink.

1          {Simultaneous conversation indiscernible.}

2          THE COURT:  I don't know whether the horse will drink or

3     not because all my order right now for the continuance is leading

4     him to the water.

5          MR. FRANCUZENKO:  Thank you, Your Honor.  But my point

6     being that I've already --

7          THE COURT:  Well, try again.

8          MR. FRANCUZENKO:  Approached {indiscernible}.

9          THE COURT:  One attempt, in this Court's viewpoint or

10    opinion, does not meet the policy and purpose behind the local

11    rule.  We don't throw our -- we don't throw -- have our reel,

12    throw our line out in the water once and leave it there for five

13    minutes and don't catch a fish and don't try again, because

14    you'll be an unsuccessful fisherman if that's the course of

15    action you took.  Sometimes you've got wait a while.  Sometimes

16    you've got to take the hook out and put it in again.  Sometimes

17    you have to change the bait.

18         MR. FRANCUZENKO:  And sometimes you catch the fish and you

19    fry it up.

20         {Simultaneous conversation indiscernible.}

21         THE COURT:  And you if you hit that wall and you've down

22    all those things and find yourself in the same position, that's

23    an appropriate time to come to talk to the Court.

24         MR. FRANCUZENKO:  Well, Your Honor, if we're going to do

25    that, and I'm not sure if this counsel is -- or there's another

1    counsel, because I've dealt with several different people on this

2    particular matter.

3         THE COURT:  Are you asking the Court to require them to

4    only notice a particular person to conduct discovery with you?

5         MR. FRANCUZENKO:  You've indicated your order.  The only

6    thing is, I don't know that it's something that can be resolved

7    by next Friday.

8         THE COURT:  No one does.

9         MR. FRANCUZENKO:  So my point is --

10        THE COURT:  -- but that's my order.  We will have it next

11   Friday, which, inside implicitly in that ruling, is that you try

12   your best to resolve it by next Friday.  No one can make miracles

13   happen, at least not me or you, and therefore if it's not

14   resolved, then it will be resolved by this Court next Friday.

15        MR. FRANCUZENKO:  Your Honor, I'm before Judge Leonard

16   next Friday in Norfolk.  I'm not available -- I'm not physically

17   available to appear.  That's why -- my --

18        THE COURT:  Well, we can move it to another Friday or the

19   Court can make it even simpler and say submit a notice --

20        MR. FRANCUZENKO:  That's what I was going to ask.

21        THE COURT:  -- by next Wednesday.

22        MR. FRANCUZENKO:  That's what I was going to ask.

23        THE COURT:  Close of business.  And letting the Court know

24   of what has and has not been resolved.  With that notice, inform

25   the Court on whether the parties believe that further oral

1   argument is necessary, and if not, the Court will rule on the

2   papers.

3          MR. FRANCUZENKO:  Your Honor, that's what I would request

4   because, again, I'm not available next Friday.  I'm with Judge

5   Leonard next Friday in Norfolk.

6          THE COURT:  Well, what you've requested has just been

7   granted.

8          MR. FRANCUZENKO:  Thank you, sir.  By Wednesday close of

9   business you want some type of notice?

10         THE COURT:  A joint notice from the parties informing the

11  Court of what has -- what remains to be resolved.

12         MR. FRANCUZENKO:  Very well.

13         THE COURT:  Hopefully, it will be a short notice that says

14  nothing.

15         MR. FRANCUZENKO:  I'm hopeful, too, Your Honor.

16         MR. SADOWSKY:  We're still open for the 10 billion, by the

17  way.

18         THE COURT:  I surely don't have it on my wonderful

19  government salary, so you're going to have to get it somewhere

20  else.

21         MR. FRANCUZENKO:  And I don't think he can get it from me,

22  from my client in this case because there's no monetary relief,

23  according to Judge O'Grady.

24         THE COURT:  Who knows.  The destruction of those pictures

25  could serve wonders in the amount of money she might be able to

```
 1   get, or maybe the parties might just want to consider sitting

 2   down and attempting to settle this matter.

 3        MR. FRANCUZENKO:  And, Your Honor, that's the funny thing.

 4   I mean, if you would ask discovery dealing with these pictures,

 5   like -- you would think they would want to know whose actually

 6   physically got custody of these pictures.  If that's truly the

 7   only thing they have the relief for, let's -- I'll -- that's

 8   relevant.  That's relevant.

 9        MR. SADOWSKY:  I mean, if we're still arguing, we don't

10   need to know who has the pictures for a Court order to destroy

11   the pictures.

12        MR. FRANCUZENKO:  Well, I can't destroy pictures if I

13   don't have them.

14        THE COURT:  What I think he was trying to convey is that,

15   obviously, they can make a representation that they have no

16   further pictures in their possession and they have no custody or

17   control over anyone who has, for purposes of destruction, and

18   therefore if that statement in and of itself didn't make your

19   client feel comfortable enough, they could then take the further

20   step of informing you of who they believe might have the picture,

21   and they will use their best efforts to get those people to

22   destroy them pursuant to any order of this Court.  And if that

23   then made your client comfortable enough, then the case is over.

24   Put it in a settlement agreement.  We're done.

25        MR. FRANCUZENKO:  Exactly.
```

1          MR. SADOWSKY:  That would be great.  I'm open to --

2          THE COURT:  Maybe we can discuss that by next Friday as

3    well.

4          MR. FRANCUZENKO:  That would great, Your Honor.  Thank

5    you, Your Honor.

6          THE COURT:  Thank you very much.

7          MR. FRANCUZENKO:  Good to see you again.

8          THE COURT:  You, too.

9          (Proceedings adjourned at 11:02 a.m.)

10

11                    **C E R T I F I C A T E**

12

13                    I, Scott L. Wallace, RDR-CRR, certify that
          the foregoing transcript of proceedings was prepared from
          an FTR Gold audio recording of proceedings in the
14        above-entitled matter and was produced to the best of my
          ability.  Indiscernible indications in the transcript
15        indicate that the audio captured was not clear enough to
          attest to its accuracy.

16

17         /s/ Scott L. Wallace                3/2/22
           --------------------------         ----------------
18         **Scott L. Wallace, RDR, CRR                Date**
             **Official Court Reporter**

19

20

21

22

23

24

25