UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **ABRAR OMEISH**, | Case No. 1:21-cv-00035-LO-IDD |
| Plaintiff, | District Judge Liam O'Grady |
| v. | Magistrate Judge Ivan D. Davis |
| **SHERIFF STACEY ANN KINCAID**, Sheriff, Fairfax County, in her official capacity, only; | |
| **OFFICER J. PATRICK**, Fairfax County Police Department, in his individual capacity, only; and, | |
| Defendants. | |

**PLAINTIFF ABRAR OMEISH'S REPLY IN OPPOSITION TO
OFFICER JUSTUN PATRICK'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Officer Patrick has a major, insurmountable problem at summary judgment. And it is the former head of the Fairfax County Police Department, after an exhaustive review of all the evidence, concluded that Abrar Omeish was at most a "verbally passive resister, who did not pose any factual imminent threat of danger" to the officer. Chief Roessler went even further and said that the only danger to the officer came when "he made the decision to enter the vehicle and use physical force." Ex. F - Chief Roessler Review of Internal Affairs Investigation at 3. Officer Patrick's boss dinged him for ignoring "at least 16 verbal offers of compliance clearly stated by Ms. Omeish." Ex. F at 3.

By itself Chief Roessler's recounting of the facts makes clear that summary judgment is not appropriate here. Ms. Omeish's claims must be resolved by a trier of fact.

## STATEMENT OF FACTS

### Plaintiff's Statement of Disputed Facts

4. Officer Patrick approached the vehicle and observed Omeish texting. Ex. 1, pp. 285-286; Ex. 2 beginning at approximately 20:04. His observation is confirmed by a text produced by Omeish. Ex. 3.

**RESPONSE:** Ms. Omeish parked and sent the text in question while waiting for Officer Patrick to approach. Omeish Dep. 79:16-80:8, 81:9-12; 117:19-118. Observing the phone in her hand when he arrived at her door, Patrick accused Ms. Omeish of having texting moments earlier, while she was still driving. Dashcam at 1:37. Ms. Omeish was on her way to an event and sent a courtesy text to inform her colleagues that she had been stopped and may be late. Omeish Dep. 42:14-43:1; Dkt. 86, Ex. 3.

5. For the next approximately 2 minutes, Officer Patrick asked Omeish 6 times for her driver's license and registration. Ex. 2 at 20:04:33-20:06:27; Ex. 4. Markley Expert Statement. Omeish did not comply. Id.

**RESPONSE:** Between the time Officer Patrick pulled Ms. Omeish over and initially asked her to step out of the vehicle, he asked for her driver's license and registration 4 times in a 30 second span, giving no pause or consideration to any question or response Ms. Omeish had. Dashcam at 2:00-3:06; Omeish Dep. 57:13-22. She never refused to comply but asked repeatedly for clarification surrounding his request. Dashcam at 2:00-3:06; Omeish Dep. 58:10-22.

"All I'm seeing is this aggressive, big guy, who is standing there … yelling actually. I was … obviously … in shock… I felt at that moment that … something of my rights was in question … I was stuck. I didn't know what to do in that situation, and so I asked him clarifying questions." *Id.* Over the next 2 minutes she respectfully informed Officer Patrick, addressing him as "Sir," that she did not believe she ran the red light and did not believe the stop was necessary. *Id.* at 2:00-4:17.

6. After repeated non-compliance, Officer Patrick requested that Omeish get out of the vehicle 13 times so that she could be placed under arrest. Id. Omeish did not comply. Id. Officer Patrick then held Omeish's arm and continued to instruct Omeish to get her out of the vehicle 14 more times. Ex. 2 at 20:06:29-20:07:48; Ex. 4. Markley Expert Statement. Plaintiff did not voluntarily exit the vehicle. Id.

**RESPONSE:** Officer Patrick escalated to barking commands for Ms. Omeish to step out of the vehicle within 63 seconds of greeting her. Dashcam at 1:36-2:39. Without taking time to explain or respond to Ms. Omeish's questions or concerns, he provided her with two

options: hand over her license or be arrested. Ex. B at 2:40-3:06. "You are about to be placed under arrest … give me your license or step out of the car. Your choice." *Id.* Followed by the clarification, "You can give me your license and registration or step out and get to jail and be done with this." *Id.*

Officer Patrick repeatedly shouted commands at a bewildered Omeish without giving her time to process. "I, obviously, was in shock." Omeish Dep. 58:1-13. Patrick said that if she offered her license and registration, she would not have to step out of the car or go to jail, and at no point before pepper spraying Ms. Omeish did he revoke the offer of those two options. Dashcam at 2:40-5:10; Omeish Dep. 96:7-11. When Officer Patrick opened the car door and began grabbing at Ms. Omeish – only two minutes after his initial greeting – she was startled and instantly offered compliance. Dashcam at 3:39, 4:17; Omeish Dep. 94:19-95:15. This included clear variations of the statement "Sir, I'll give you my license," offered at least 16 times over the course of the next 54 seconds until Officer Patrick pepper sprayed her. Dashcam at 4:17-5:10. "And I mentioned again just repeatedly begging him, I will give you my license, I will give you my license. We don't have to do this. We don't need to escalate this." Omeish Dep. 98:15-18.

7. Once Patrick initiated the arrest procedure, Omeish indicated that she would produce her license. Id.; Ex. 4. However, she did not exit the vehicle and continued to resist getting out of the vehicle. Id.

**RESPONSE:** Her first offer of compliance was met with a flat "Nope!" as Officer Patrick suddenly and violently attempted to pull her out of the car. Dashcam at 4:20. Ms. Omeish repeatedly offered compliance with the request for her license and registration, which he ignored. Dashcam at 4:20-5:12; Omeish Dep. 98:15-18. "I was desperately trying to comply,

and he wasn't having it." Omeish Dep. 100:17-18. But while demanding she exit the vehicle, Officer Patrick stood in the open doorframe blocking her egress while continuing to grab at her and ignore her offers of compliance. Dashcam 4:20-5:12*.; Omeish Dep., 98:12-99:2-6.

8.  Officer Patrick perceived Omeish's left foot bracing the door; saw her leaning toward the passenger's side of the vehicle; observed her resisting his attempts to remove her from the vehicle by grasping his arm with her hand; and bringing an object from a dark place toward him in her right hand. He believed the resistance was escalating. Ex. 1., pp. 231-242, 294.

**RESPONSE:** Ms. Omeish has no recollection of her left foot bracing the door. Omeish Dep., 105:14-20. Officer Patrick himself only recalled glancing at her foot one time during the entire encounter to find it resting on the doorframe. Patrick Dep. 281:4-15. In fact, Ms. Omeish was terrified by the sudden escalation and violence Officer Patrick used in his frustration, which in her confused state felt like an attack. Omeish Dep. at 59:1-61:22. "[H]e was in … such a state where he was not responsive…. I think … his ego got the better of him…. [H]e was no longer a human being I could engage with." Ms. Omeish leaned back toward the passenger seat to create a safe distance between her and the shouting officer leaning into her vehicle. 104:8-22. When her attempts to deescalate and reason with him failed, Ms. Omeish picked up the cell phone Officer Patrick had observed less than two minutes before, and she told him, "I feel I have to record this right now." Dashcam at 3:50; Omeish Dep. 103:16-20. Officer Patrick then reached into the car to grab Ms. Omeish's arm. Dashcam at 3:51.

Officer Patrick has provided no evidence to explain how Ms. Omeish could possibly both "grasp his arm with her hand" and "bring[] an object from a dark place toward him with her

right hand" when she only had the use of one hand. Officer Patrick has also not provided an explanation for his fear regarding the "object from a dark place" when he had seen it seconds before, and she had told him she was going to record lifting the device.

After Ms. Omeish told Officer Patrick that she was going to record the interaction, he reached into the vehicle. Dashcam at 3:51. With Officer Patrick shouting commands and pushing further into the car, Ms. Omeish picked up the phone Officer Patrick had observed two minutes before, and she said, "I would like to record." Dashcam at 4:11; *see* Omeish Video. For the next 61 seconds, Officer Patrick physically terrorized Ms. Omeish, pushing into her vehicle, grabbing her, and screaming commands with no regard for her words or her fear, pointing pepper spray at her, and attempting to drag her out of the car while her seatbelt was on and her foot was on the brake. Dashcam at 4:11-5:12; Omeish Dep. 106:6-11.

Officer Patrick provides no evidence to support his suggestion that Ms. Omeish ever displayed a hint of active resistance.

9.  The traffic stop occurred on a dark and busy street. Ex. 2. See also, Ex. 1, p. 227.

**RESPONSE:** While the street was busy, the traffic stop occurred directly under a streetlight on a generally well-lit street. Dashcam at :45-1:30. Ms. Omeish recalls pulling up to a safe space in front of a neighborhood home, watching Officer Patrick approach her vehicle, and taking in his appearance in detail. Omeish Dep. 56:15-57:8. All of this was visible to her at the location of the stop and in the light captured in the dashcam video. *Id.*; Dashcam video at 1:30. Officer Patrick was able to look into Ms. Omeish's car and see that she was texting and that she placed the phone in her lap when he asked her about it. Patrick Dep. 287:7-8. He was also able to assess her size and his strength advantage over her. Patrick Dep. 189:18-190:19.

10.  Officer Patrick testified that he was concerned with her safety and he felt threatened.

Ex. 1, pp. 239-243.

**RESPONSE:** Officer Patrick testified he was concerned for Ms. Omeish's safety, and yet he deployed pepper spray inches from her face inside the confines of her car without ensuring that the ignition was off or that the brake was engaged. Patrick Dep. 262:9-263:22, 267:8-271:14, 274:1-276:9, 308:17-309:1. He jerked her halfway out of the car while her seatbelt was still on. Dashcam at 5:22. And he bashed her head against the door frame as he ultimately, violently, drug her out of the vehicle. Dashcam at 5:32; Omeish Dep. 106:9-11.

Though Officer Patrick now claims to have felt threatened, he testified in his deposition that while approaching the vehicle he took notice of her size and his resulting strength advantage over her. Patrick Dep., 189:18-190:19. The only object Officer Patrick belatedly described as a potential weapon was the cell phone he had just commented on and known the location of moments earlier. Patrick Dep. 286:18-287:8. Officer Patrick never expressed feeling threatened by Ms. Omeish or suspecting she potentially had a weapon during the FCPD internal affairs investigation. Check and CITE.

In fact, the official in charge of FCPD—Chief Roessler—after reviewing all evidence about the incident concluded that Ms. Omeish was a "verbally passive resister." *See Generally* Ex. D (Memorandum in Response to Internal Investigation from Chief Officer Roessler). He could have provided her with more time to comply as there was no urgency to the situation and that would have been an objectively safer approach for each of them. *Id.*

11. Based upon the totality of his observations, Patrick determined that he would use OC Spray to get Omeish out of her vehicle, as he believed using the O.C. spray created the least chance of causing Omeish injury while getting her out of the car quickly and

allowing him to avoid the use of his physical strength. He wanted to avoid her possibly ending up in traffic if pulled her forcefully from the vehicle. Ex.1, pp. 227, 241-243.

**RESPONSE:** Officer Patrick succeeded in jerking Ms. Omeish out of the still-running vehicle after several tries, slamming her head against the doorframe in the process, shortly after pepper spraying her at a range of a few inches inside her vehicle, with her foot still on the brake. Dashcam at 5:10-5:36; Patrick Dep. 262:9-263:22, 267:8-271:14, 274:1-276:9, 308:17-309:1; Omeish Dep. 106:9-11. She was blinded by the pepper spray, screaming in pain and panic, and almost stumbled into the street as he pulled her out, disoriented by the encounter. Dashcam at 5:10-5:36; Omeish Dep. 108:4-11. Officer Patrick escalated from first asking for Ms. Omeish's license to pepper spraying her in the space of three minutes and 12 seconds. Dashcam at 1:58-5:12.

Officer Patrick used his physical strength and intimidating demeanor to force Ms. Omeish's compliance – despite no escalation on her part – for nearly a minute before unholstering his pepper spray. Dashcam at 3:51-4:38. There is no evidence to support Officer Patrick's contention that he chose to use pepper spray out of anything other than frustration.

12. Officer Patrick deployed one short burst and directed the spray toward the hijab/hair line area of Omeish's face; most of the spray hit the passenger side window. Ex. 1, pp. 305-306, 309. See also Ex. 2 at 20:07:47.

**RESPONSE:** FCPD's policy recommends deploying pepper spray from a distance of at least three feet. Officer Patrick pepper sprayed Ms. Omeish's face from a distance of a few inches, inside a small, enclosed space. *See* Omeish Video. There is no evidence to suggest that aiming at the hairline would make any difference from that close proximity. In any event, Ms. Omeish was temporarily blinded by it. Omeish Dep., 107:15-17.

13. Even with the use of the O.C. spray, it still took 22 seconds to remove Omeish from the car. Ex. 4. See also, Ex. 2 at 20:07:47-20:08:09.

**RESPONSE:** Removal took 22 seconds because Officer Patrick first jerked a sobbing, blinded Omeish directly into the door frame, causing her to fall back into the seat. Dashcam at 5:22. He also had not realized that her seatbelt was still engaged, so he had to reach inside to unbuckle it in order to finally pull the terrified woman from the car. Dashcam at 5:23-5:34.

14. After being pulled from the car, Omeish pulled away from Patrick towards traffic. Ex. 1, p. 320; Ex. 2 at 20:08:09-20:08:54.

**RESPONSE:** Ms. Omeish was disoriented and blinded due to Officer Patrick's pepper spray. Omeish Dep., 107:15-17. Screaming for help, her eyes stayed closed while Officer Patrick jerked her around attempting to engage the handcuffs. Dashcam at 5:36-6:10.

23. The sheriff's deputies are in charge of the photographs and control the process. The officer is merely present. Id.; Ex. 9, Lambert Tr. p. 34

**RESPONSE:** Sheriff's deputies do guide the processing of detainees held at the Fairfax County Adult Detention Center, but Officer Patrick also maintained custody of Ms. Omeish throughout her time at the facility. Patrick Dep. 324:2-4. He was also an active participant, commenting on procedure, assisting deputies with the photographing, and directing others. Omeish Dep. 174-178; Patrick Dep. 324:5-19.

24. It was the sheriff that required Omeish to remove the hijab and declined her request to wear it. Ex. 7, p. 159, 164, 166.

**RESPONSE:** Officer Patrick directed her in preparation for the photo and commented to a deputy that she would have to "take off whatever that thing is on her head." Omeish Dep. 173:3-15.

26. Omeish removed her own hijab. Ex. 7, pp. 188-189.

**RESPONSE:** Ms. Omeish pulled back her hijab enough to make her full face and ears visible, in line with the SOP, in an effort to avoid taking it all the way off. Omeish Dep. 183:13-184:7. But the deputy told her it was not enough. Ultimately the deputy removed the hijab from Ms. Omeish's head completely, laying it to rest on her shoulders. *Id.* at 184:8-16.

27. The sheriff's office accommodated a request by Omeish for a female officer to take the photos. Ex. 7, p. 194.

**RESPONSE:** Ms. Omeish requested that she be photographed outside the view of males. Omeish Dep. 225:4-20. The Sheriff's Office provided a female deputy to take the photo. But male officers including Patrick, as well as visitors and passersby could still see her throughout the process. *Id.*

28. The sheriff's office accommodated Omeish's request to shielded from males in the vicinity by having a blanket held up while Omeish's hijab was off. Ex. 7, p. 195.

**RESPONSE:** Male officers including Officer Patrick remained in the room, some of them holding the blanket up on one side of Ms. Omeish. *Id.* But those male officers including Officer Patrick, visitors, and other passing male officers could still see her while she was uncovered. *Id.*; Patrick Dep. 324:16-19.

29. Patrick helped hold up a blanket to help five Omeish privacy. Ex. 1, p. 324.

**RESPONSE:** Officer Patrick is also a male and had full view of Ms. Omeish. Omeish Dep., 174:1-22; Patrick Dep. 324:16-19. Officer Patrick provides no evidence to suggest this is adequate religious accommodation.

30. Patrick deferred to the Sheriff's deputies because they were in charge. Ex. 1, pp. 325, 332. Patrick did not control the process or direct how photos were taken. Ex. 7, pp. 130-131, 187.

RESPONSE: Officer Patrick was an active participant throughout the process, directing other officers and offering commentary about what should be done. Omeish Dep., 170:3-171:22; Patrick Dep. 324:2-4. Further, Officer Patrick maintained custody of Ms. Omeish the entire time she was detained at the Fairfax County Adult Detention Center. Patrick Dep. 324:2-4.

31. Omeish maintains she was intimidated by Patrick's approach of her vehicle, his uniform and his tone and feared for her safety, so she could not comply with his requests. Ex. 10, pp 56-63. She maintains he blocked her exit from the vehicle and that is what forced her toward the passenger's side of the vehicle. Ex. 10, Omeish Tr. pp. 98-99, 104-105. But see, Ex. 2.

RESPONSE: Defendant's Exhibit 2, the Dashcam Video, reveals Officer Patrick's quick shift in demeanor, aggression, and use of force, as well as Ms. Omeish's fear in her voice and movements. *See* Dkt. 86, Ex. 2.

### Plaintiff's Statement of Undisputed Facts

1. On March 5, 2019, Defendant Justun Patrick pulled Plaintiff Abrar Omeish over in a routine traffic stop. Dkt. 86, Patrick's SOF ¶¶ 1-3.

2. Upon approach, Officer Patrick observed Ms. Omeish with her phone in her hands and accused her of texting while driving, despite the fact that she had been parked for nearly a minute. Dashcam at :45-1:45.

3. Ms. Omeish denied texting while driving, explained that she was texting her colleagues

that she would be late. Dashcam at 1:37-1:45.

4. Officer Patrick went from requesting Ms. Omeish's drivers license and registration for the first time, to demanding she step out of the vehicle in 41 seconds. Dashcam at 1:58-2:39.

5. Ms. Omeish initially questioned the reason for the stop and attempted to talk with Patrick, but after sudden escalation, she was shocked and tried not to provoke him. Dashcam at 1:58-4:17; Omeish Dep. 98:9-20.

6. Less than one minute later, Officer Patrick opened Ms. Omeish's car door and threatened to pull her out. Dashcam at 3:39-4:17.

7. Afraid, Ms. Omeish begged Patrick not to escalate the situation. When he continued yelling commands to get out of the car, Ms. Omeish informed Patrick that she would be recording the interaction. Dashcam at 3:50-4:11.

8. At that moment, Officer Patrick reached inside the car, leaning further into the driver's side and shouting commands. "I'm done asking!" Dashcam at 4:06.

9. A few seconds later, Ms. Omeish again informed Officer Patrick that she would like to record the interaction. Dashcam at 4:11.

10. Two minutes and 19 seconds after his first request for Ms. Omeish's license and registration, Officer Patrick grabbed hold of Ms. Omeish's left arm while still leaning into the driver's side of the vehicle shouting aggressively. Terrified, Omeish said in a panicked tone, "I'll give you my license!" to which Patrick responded, "Nope!" Dashcam 1:58-4:18.

11. Ms. Omeish repeated her plea to give Officer Patrick her license at least 16 times over the less-than-two-minute struggle that followed, ending in Omeish's arrest. Dashcam

4:18-6:10.

12. With Officer Patrick still holding her left arm, Ms. Omeish continued to fumble with her phone attempting to record the encounter. *See* Omeish Video. As she did so, Officer Patrick reached for his weapons belt. Ms. Omeish feared he was reaching for a gun. Dashcam at 4:36; Omeish Dep. 100:10-22.

13. Just as Officer Patrick pulled out his pepper spray, Ms. Omeish got the video recording started on the phone in her right hand. Officer Patrick still held her left arm. *See* Omeish Video.

14. Officer Patrick aimed the pepper spray into the vehicle, inches from Ms. Omeish's face. Ms. Omeish again shouted, "No! No! I'll give you my license!" *Id.*; Dashcam at 4:39.

15. Officer Patrick attempted to drag Ms. Omeish out of the car by her left arm which he still held. But he struggled with all the things in his hands. Dashcam at 4:49.

16. With Ms. Omeish still begging him to allow her to hand over her license, Officer Patrick pepper sprayed her face from a few inches away, inside the confined space of her car. Dashcam at 5:12.

17. Officer Patrick replaced the pepper spray in its belt holster and reached in with both hands to pull Ms. Omeish from the car. Applying all the force of his body weight, he attempted to yank her out the driver's side door and banged her head into the door frame, giving her a concussion. Ms. Omeish fell back into the driver's seat. Dashcam at 5:22.

18. Officer Patrick then realized Ms. Omeish still wore her seat belt, so he reached inside to disengage it before yanking her out of the car again. Dashcam at 5:32.

19. Disoriented, blinded from the pepper spray, and in a panic, Ms. Omeish stumbled

around as Officer Patrick shoved her attempting to apply handcuffs. Dashcam at 5:34-6:10.

20. Ultimately, Ms. Omeish was pepper sprayed, concussed, and handcuffed within four minutes and 12 seconds of being pulled over for a minor traffic violation because she did not follow Officer Patrick's orders fast enough to avoid his rage and frustration. Dashcam 1:58-6:10.

21. After taking Ms. Omeish into custody, Officer Patrick transported her to the Fairfax County Adult Detention Center, presented the charges before the magistrate, and escorted her through processing and photographing. Patrick Dep. 323:20-324:19.

22. While Ms. Omeish was detained by the Fairfax County Sheriff's Office, Officer Patrick maintained custody of her through the entire process, walking her to the exit and removing the handcuffs after the process was complete. *Id.*

## ARGUMENT

### I.   Precedent precludes Justun Patrick's bid for qualified immunity

Qualified immunity asks: (1) whether a Plaintiff has established a violation of a constitutional right, and (2) whether the right was clearly established at the time of the violation. *Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 898 (4ᵗʰ Cir. 2016). So qualified immunity is denied to officials who "violate a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted). Officers' actions "violate a clearly established constitutional right only if, in light of preexisting law, the unlawfulness of the actions is apparent." *Iko v. Shreve*, 535 F.3d 225, 237-38 (4ᵗʰ Cir. 2008). In other words, an officer has fair warning his conduct is unconstitutional if an objectively reasonable officer in similar circumstances at the time the violation occurred

would have known. *Id.* at 238 (citing *Jackson v. Long*, 102 F.3d 722, 731 (4ᵗʰ Cir. 1996)).

**a. The Fourth Circuit's decision in *Armstrong* clearly establishes Patrick's objective actions violated Plaintiff's clearly established rights.**

Officer Patrick relies on *Estate of Armstrong* to his detriment. The court there found that case law clearly indicated officers' repeated use of a taser on a detainee who did not pose a threat to others and non-violently resisted arrest was a violation of his Fourth Amendment rights. *Estate of Armstrong*, 810 F. 3d 907-08. Qualified immunity only applied in that case because at the time of the encounter, it may not have been so established as to be clear to "every reasonable official" that tasing Armstrong was unconstitutional. *Id.* at 908. Because of *Armstrong,* Patrick has no such excuse here.

Like that case, the question here is whether it was clearly established in March 2019 it was excessive to use force against Ms. Omeish, as she offered, at most, "stationary and non-violent resistance to a lawful seizure." *Id.* at 907. "Painful, injurious, serious inflictions of force … do not become reasonable simply because officers have authorization to arrest a subject who is unrestrained. *Id.* at 904. Simple noncompliance with police directives and nonviolent physical resistance do not necessarily create "a continuing threat to the officers' safety." *Meyers v. Baltimore County*, 713 F.3d 723, 733 (4ᵗʰ Cir. 2013).

It is clearly established in the Fourth Circuit and others that non-threatening, non-violent resistance cannot justify use of force "where a reasonable officer at the scene would not have any reason to believe that the arrestee was a potentially dangerous individual." *Estate of Armstrong*, 810 F.3d 904-05. It is "excessive to use a taser to control a target without having any reason to believe that a lesser amount of force – or a verbal command – could not exact compliance." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1286 (10ᵗʰ Cir. 2007).

Refusing to get into an out-of-state officer's police car until a local officer arrives does not justify hitting the arrestee. *Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995). An arrestee "yanking his arm away" from an officer does not justify "being tackled." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 733, 740 (5th Cir. 2000). Punching an arrestee cannot be justified where there is no "real evidence that a relatively passive man was a danger to the larger, trained police officer." *Rowland v. Perry*, 41 F.3d 167, 172, 174 (4th Cir. 1994).

It is also clearly established in the Fourth Circuit that pepper spray, "a use of force that causes closing of the eyes through swelling of the eyelids, … immediate respiratory inflammation, … and … immediate burning sensations," is excessive when used on an unarmed person who does not seem to pose a threat to the public or officers. *Park v. Shiflett*, 250 F.3d 843, 848-49, 852 (4th Cir. 2001). In *Park*, a woman saw her husband being handcuffed and sprinted to his aid. *Id.* at 848-49. Police at the scene found her behavior threatening enough to arrest her for disorderly conduct and obstruction of a law enforcement officer. *Id.* at 854. But the Fourth Circuit rejected it as justification for pepper spraying her. Despite her seemingly aggressive approach, the court found it was "difficult to imagine the unarmed [wife] as a threat to the officers or the public," and therefore the officers' "irresponsible use of pepper spray twice from close range … was indeed excessive." *Id.* at 852-53.

Officer Patrick now claims he felt threatened by the Plaintiff. But Patrick noted her small frame and his physical power advantage before he even greeted her. OPP SOF ¶ 9. Patrick also now claims he was afraid the cell phone Plaintiff was attempting to record him with might have been a weapon. OPP SOF ¶¶ 8; SOF ¶¶ 7, 9. But Patrick saw the phone in her hand when he approached the car to accuse her of texting and driving. OPP SOF ¶ 4. He

saw her place the phone in her lap when she explained that she had only texted after she parked. *Id.*. And he heard her at least twice say she was going to record the interaction. OPP SOF ¶ 9; SOF ¶¶ 7, 9. Even if all of Officer Patrick's claims were taken as true – the opposite of the summary judgment standard – Ms. Omeish attempting to push his arm away, bracing her leg against the doorframe, and leaning toward the passenger's seat, all represent stationary, non-violent, passive resistance. Like *Park*, it is difficult to imagine the diminutive, unarmed Plaintiff trying to talk her way out of a ticket was a threat to the Defendant. Patrick further claims he felt deploying pepper spray on Ms. Omeish was the best way to protect her from the dangers of traffic on a busy roadway. OPP SOF ¶ 11. But if Ms. Omeish's actions were not threatening enough to justify use of force, surely outside factors beyond her control cannot earn her that punishment when conversational tactics could have accomplished the same protection with less force.

The standards represented by these cases have been in place for decades and are clearly established according to the Fourth Circuit. But even without them, common sense dictates that pepper spray is overkill in a routine traffic stop where the driver delays handing over her license for 41 seconds. SOF ¶ 4.

**b. Patrick's actions were not in any way reasonable.**

Officer Patrick stopped Ms. Omeish for running a red light, and 41 seconds later, he asked her to step out of the car to be arrested. *Id*. Within two minutes and 19 seconds, Patrick reached into the car and physically took hold of her arm. SOF ¶ 10. Ultimately, Ms. Omeish was pepper sprayed, concussed, and handcuffed within four minutes and 12 seconds of being pulled over for a minor traffic violation because she did not follow Officer Patrick's orders fast enough to avoid his rage and frustration. SOF ¶ 20. Nothing about that lightening

fast escalation was reasonable, even if the constitutional standards were not clearly established.

In the process, Officer Patrick violated the Fairfax County Police Department pepper spray policy when he deployed the spray closer than three feet away (*see* Exhibit G), in an enclosed space (*Id.*), without checking to make sure the car's ignition was off before incapacitating the driver who still had her foot on the brake (*Id.*). OPP SOF ¶ 8. He also violated the Department's Use of Force Policy by failing to use any de-escalation tactics. *See* Exhibit G. An officer's conduct, in violation of the internal policies that apply to him, is an indication that reflects a knowledge of wrongdoing.

## II.     Omeish has established her Fourth Amendment claim.

For the reasons stated above, Ms. Omeish's Fourth Amendment claim should survive summary judgment. Excessive force analysis requires balancing of the severity of the crime at issue, whether the suspect poses an immediate threat to officers or others, and whether she is actively resisting arrest or attempting to evade arrest by flight. *Park*, 250 F.3d 852-53. Ms. Omeish was stopped for a minor traffic violation and posed no threat of harm or evasion when Officer Patrick pepper sprayed her. As explained above, she was passively, nonviolently resisting arrest only to the extent that she was terrified of Patrick's sudden escalation in force. No reasonable officer in Patrick's position that night would have used force on Ms. Omeish when answering her questions and talking to her could have accomplished the goal without it. Indeed, Patrick's ultimate boss—Chief of Police Roessler—determined Ms. Omeish to be a "verbally passive resister, who did not pose any factual imminent threat of danger to him. Ex. F at 2.

## III.     Omeish has established her First Amendment claim.

Officer Patrick is intent on pointing the finger solely at Sheriff Kincaid for her violation of Ms. Omeish's First Amendment right to practice her religion without government-sponsored forced hijab removal. Officer Patrick suggests that because the policies regarding photography at the Fairfax County Adult Detention Center are set by the Sheriff, he bears no responsibility in bringing his arrestees to the facility for processing. But Officer Patrick was an engaged participant in the processing and photographing of Ms. Omeish while uncovered. He cannot now claim to have deniability because of a technicality. By that logic, no agent of any organization would ever be responsible for anything they did so long as they could claim separation from the policymaker.

Beyond this argument that Patrick has no responsibilities for what happens to his arrestees during booking, Ms. Omeish's First Amendment argument against Patrick tracks her RLUIPA argument against Kincaid, and Ms. Omeish incorporates those arguments here in full.

<strong>CONCLUSION</strong>

For the reasons set forth herein, Plaintiff respectfully asks the court to **DENY** Defendant Justun Patrick's Motion for Summary Judgment.

Dated: June 23, 2022                         Respectfully submitted,

CAIR LEGAL DEFENSE FUND
BY: /s/ Lena F. Masri
Lena F. Masri (VA 93291)
    lmasri@cair.com
Gadeir I. Abbas (VA 81161)
    gabbas@cair.com
Justin M. Sadowsky (VA 73382)
    jsadowsky@cair.com

453 New Jersey Ave.,
S.E.Washington, DC
20003
Phone: (202) 742-6420
Fax: (202) 488-0833