IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| ABRAR OMEISH,<br><br>  *Plaintiff,*<br><br>  v.<br><br>STACEY ANN KINCAID AND J. PATRICK,<br><br>  *Defendants.* | Civil Action No. 1:21-cv-35<br>Hon. Liam O'Grady |

## MEMORANDUM OPINION AND ORDER

### Introduction

This matter comes before the Court on two of the Parties' Motions for Summary Judgment. The Plaintiff, Officer J. Patrick, has filed a Motion for Summary Judgment against the Plaintiff, Abrar Omeish. Dkt. 85. Omeish has also filed a Motion for Summary Judgment against the Defendant, Sheriff Stacey Ann Kincaid. Dkt. 90. In addition, Plaintiff Officer J. Patrick has filed a Motion *in limine* to preclude the introduction of certain evidence at trial. Dkt. 93. These matters have been fully briefed, oral argument has been heard, and the matter is ripe for disposition.

### Background

Plaintiff Omeish is an adult woman who is a devout member of the Muslim faith. As part of the tenants of Omeish's faith, she wears a hijab head covering in the presence of mixed gender company with whom she is not directly related. The hijab covers Omeish's head and neck, while her face remains visible. This dispute between the Parties originated from a traffic stop

1

performed by Defendant Officer J. Patrick on Plaintiff Omeish's vehicle close to Annandale, Virginia. J. Patrick is a police officer employed by the Fairfax County Police Department ("FCPD"). Sherriff Stacey Ann Kincaid is being sued in her official capacity as an officer of the Commonwealth of Virginia.

Officer Patrick asserts that Omeish failed to stop at a red light on the evening of March 5, 2019. Dkt. 86 at 2. Officer Patrick approached the vehicle after effecting the traffic stop and began a contentious interaction with Omeish. The Parties dispute the exact timing of the events that happened next, but it appears undisputed that initially Omeish did not comply with Officer Patrick's commands to produce her driver's license. Within the next few minutes, Officer Patrick attempted to and did physically remove Omeish from the car and proceeded to place Omeish under arrest. During this physical interaction, Officer Patrick used his pepper spray (or "OC spray"[1]) on Omeish. Officer Patrick arrested Omeish and brought her to appear before a Magistrate at the Fairfax County Sheriff's Office. The entire traffic stop was recorded on Office Patrick's dash cam.

After being granted bond, Omeish was taken to the Fairfax County Adult Detention Center (the "ADC.") At the ADC, Omeish was photographed as part of the regular processing of detainees. *See* Dkt. 86 at 4. When the photograph was taken, Omeish was instructed she would need to remove her hijab. Omeish asserts that she attempted to comply with this instruction when she "pulled back her hijab enough to make her full face and ears visible..." Dkt. 101 at 10. However, eventually Omeish's entire hijab was removed while she was in a room occupied by male police officers and ADC employees. It is undisputed that this was a violation of Omeish's religious beliefs and caused her distress. *See* Dkt. 96 at 2 ¶ 8.

---

[1] OC Spray refers to oleoresin capsicum spray, which is equivalent to pepper spray or mace. It is a chemical compound that police officers can discharge using a device. *See Elder v. Thompson*, 2014 U.S. Dist. LEXIS 55618 at *7 n. 3 (W.D. Va. April 22, 2014).

Omeish now brings this civil action against the named Defendants. Currently, Omeish has brought claims for violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") against the Defendant Sheriff Stacey Ann Kincaid. Dkt. 24 at 11. The Court has previously ruled that Sheriff Kincaid may be found liable for injunctive relief under RLUIPA. Dkt. 40 at 9. Omeish also asserts a claim for excessive force and a violation of her First Amendment rights against Officer Patrick. In addition to the two Motions for Summary Judgment, Officer Patrick has also sought to preclude the introduction of FCPD internal investigations, policies, and procedures into evidence.

**Discussion**

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact." Federal Rule of Civil Procedure 56(a). A party opposing a motion for summary judgment must respond with specific facts, supported by proper documentary evidence, showing that a genuine dispute of material fact exists, and that summary judgment should not be granted in favor of the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If a non-movant fails to properly support an assertion of fact, the Court will grant summary judgment if the "motion and supporting materials—including the facts considered undisputed— show that the movant is entitled to it." Federal Rule of Civil Procedure 56(e)(3).

### The Motion for Summary Judgment on the Excessive Force Claim

Officer Patrick has moved for Summary Judgment on the bases that he is entitled to qualified immunity and that the undisputed facts demonstrate that his use of force was objectively reasonable. Dkt. 56 at 4, 15. Omeish argues that established precedent precludes a finding of qualified immunity because Omeish was no threat to Officer Patrick at the time of the arrest and provided only "stationary, non-violent, passive resistance." Dkt. 101 at 17. Omeish

3

also argues that Officer Patrick's actions were unreasonable based on the FCPD's use of force policies and the lack of imminent threat of danger posed by Omeish on the night of her arrest.

Title 42 Section 1983 allows for a person to bring a civil action against any person who "acting under color of state law, abridges a right arising under the Constitution or laws of the United States." *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). However, the doctrine of qualified immunity protects police officers from civil liability "so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (*per curiam*) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The Supreme Court has continually reinforced that what is to be considered established law should not be defined in an overly general manner, but rather "the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (internal quotation marks omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). The High Court has also recognized that this analysis is particularly important in the context of the Fourth Amendment, where it is difficult to apply a clearly established legal precedent to every factual situation a police officer might encounter at the time a person is seized. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (*per curiam*). For a rule to be clearly established, the right in question must be identified and it must "be clear to the defendant that his conduct would violate that right in the situation as he reasonably understood it." *Coleman v. Jones*, 2022 U.S. App. LEXIS 16871 at *17 (4th Cir. 2022) (unpublished opinion).

Omeish argues Fourth Circuit precedent establishes that Patrick violated Omeish's Fourth Amendment rights on the night of the arrest. Dkt. 101 at 15. Omeish argues that the Fourth Circuit decision in *Park v. Shiflett* establishes the clear rule that police cannot use pepper spray

on an unarmed person who does not pose a threat to an arresting officer. 250 F.3d 843 (4th Cir. 2001).[2] In *Park*, an unarmed woman ran towards a police officer when she observed her husband being arrested and was subsequently pepper sprayed twice from "close range" after she was handcuffed. *Id.* at 852. The Fourth Circuit upheld the district court's finding that the police officer used excessive force after observing, "an analysis of excessive force, requires careful attention to the facts and circumstances of each particular case, including the severity of crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 853 (internal quotations omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 398 (1989)). Although there are similarities between *Park* and the present case, there are several factual differences that prevent a finding that a clear rule is established and would apply to Omeish's arrest. As discussed below, those differences include the facts that Omeish was resisting Officer Patrick and that the confrontation occurred during a traffic stop next to a roadway.

Omeish also points to several appellate decisions that she argues indicate the use of force on an unarmed and unthreatening individual is unreasonable. Dkt. 101 at 15-16 (citing *Estate of Armstrong v. Village of Pinehurst*, 810 F.3d 892, 905 (4th Cir. 2016) ("taser use is unreasonable in response to resistance that does not raise a risk of immediate danger..."); *Meyers v. Balt. County*, 713 F.3d 723, 733-734 (4th Cir. 2012) (repeated use of a taser on a restrained and

---

[2] The decision in *Park* was decided one month before *Saucier v. Katz* and does not explicitly follow the Supreme Court's test for qualified immunity announced in that decision. 533 U.S. 194. However, in revisiting *Park* the Fourth Circuit has held that *Park* may indicate it is unreasonable to pepper spray an individual if they pose no threat to an arresting officer. *Hayes v. City of Seat Pleasant*, 469 Fed. Appx. 169, 174 (4th Cir. 2012) (unpublished opinion). In addition, other Appellate Courts have found that *Park* is in line with the established consensus that repeated pepper spray of individuals who were not a threat to arresting officers was an unreasonable use of force. *Asociacion de Periodistas de P.R. v. Mueller*, 529 F.3d 52, 61 (1st Cir. 2008) (the repeated use of pepper spray on protesters while they were on the ground was a clear violation of the Fourth Amendment as established by the precedent in several Appellate Courts).

unresisting arrestee could be considered excessive force); *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994) (qualified immunity did not preclude summary judgment for a police officer defendant on excessive force claims when there are disputed facts as to the degree which an unarmed man resisted arrest); *Casey v. City of Federal Heights*, 509 F.3d 1278, 1282 (10th Cir. 2007) (tackling an unarmed individual who was not resisting and who was not informed he was under arrest was not reasonable when the arrestee was only "a nonviolent misdemeanant who was neither dangerous or fleeing.") However, after reviewing these cases it appears there are major factual distinctions in the present case that would preclude the Court from finding that Officer Patrick's actions violated a clearly established legal precedent. The most striking difference is that none of the arrestees in these cases were seized during a traffic stop on the side of a busy, two-lane road.

The material undisputed facts of the arrest make this case particularly distinct from the legal precedent cited. These facts include that Omeish was pulled over on the side of the road; the traffic stop occurred at night; Officer Patrick approached the vehicle on the driver's side with his back to the roadway and significant traffic; and that Officer Patrick requested that Omeish present her driver's license up to sixteen times; Omeish did not comply with these requests, and Officer Patrick attempted to physically remove Omeish from the vehicle. While the degree to which Omeish resisted this attempt to remove her may be disputed, it is undisputed that Omeish did not comply with Officer Patrick. At this point Patrick utilized his pepper spray and removed her from the vehicle.

This situation with which Officer Patrick was presented was undoubtedly "tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 397. Most importantly to the analysis of Omeish's arrest is that it took place on the side of a "busy roadway." Dkt. 101 at 6, 17. Courts

have long recognized the dangers that are present when a police officer makes a traffic stop on the side of a road (for a variety of reasons). *See Rodriguez v. United States*, 575 U.S. 348, 356 (2015); *United States v. Stanfield*, 109 F.3d 976, 978 (1997) ("Law enforcement officials literally risk their lives each time they approach occupied vehicles during the course of investigative traffic stops."); *Md. v. Wilson*, 419 U.S. 408, 413 (1997) (officer safety during a traffic stop is a "weighty interest."); *Pa. v. Mimms*, 434 U.S. 106, 110-111 ("The hazard of accidental injury from passing traffic to an officer standing on the driver's side of the vehicle may also be appreciable in some situations.") The fact that the arrest in the current case took place on the side of a road, with passing traffic, undoubtedly indicates that Patrick had more potential hazards to consider than an officer who made a similar arrest away from a roadway. Although Omeish argues that she presented no danger to the larger police officer, there is no persuasive argument that the resistance of a police officer's commands and physical interactions, in that situation, is not inherently dangerous. While Omeish herself might not have been a direct physical threat, the undisputed record[3] shows that it is reasonable for Officer Patrick to assume that a prolonged struggle during a roadside arrest is inherently dangerous to both Omeish and Officer Patrick.

The arrest of Omeish is too factually distinct from other legal precedent to find that there is a bright-line rule that would prevent Patrick from the use of pepper spray during a traffic stop. *See Arizona v. Johnson*, 555 U.S. 323, 330 (2009) ("the risk of harm to both the police and the occupants of a stopped vehicle is minimized, we have stressed, if the officers routinely exercise unquestioned command of the situation.") (internal quotations omitted) (quoting *Maryland v. Wilson*, 519 U.S. 408, 414 (1997)). These factual distinctions would preclude a finding that there was no danger to Patrick when Omeish began to resist his attempt to arrest her. *See Brown v.*

---

[3] The dashcam video clearly shows that Officer Patrick is close to oncoming traffic with his backed turned to vehicles approaching the traffic stop.

*Gilmore*, 278 F.3d 362, 369 (for a comparable misdemeanor arrest, the Fourth Circuit held that for "courts to fine-tune the amount of force used in a situation such as this would undercut the necessary element of judgment inherent in a constable's attempts to control a volatile chain of events.")    As the cases relied on by the Plaintiff all focused on the potential lack of threat to an officer's safety when an arrest was made, there has not been an established legal precedent that would apply to the undisputed facts of this case. *See Ray v. Roane*, 948 F.3d 222, 229 (4th Cir. 2020) (a right is clearly established based on Fourth Circuit precedent, Supreme Court precedent, the highest court of the State, or a general consensus in persuasive authority) (citations omitted). Therefore, at this time there is no applicable legal precedent that is so "clearly established" that it has "a sufficiently clear foundation in then-existing precedent." *Wesby*, 186 S. Ct. at 589. As Officer Patrick is entitled to qualified immunity, the Court **GRANTS** Summary Judgment for Officer Patrick on the claims that he violated Omeish's Fourth Amendment rights.

**First Amendment claims against J. Patrick**

Omeish has asserted §1983 claims against Officer Patrick in his individual capacity for the violation of the right to free expression under the First Amendment. Dkt. 24 at 14. Officer Patrick has argued that Omeish's claims for violations of her First Amendment rights should be dismissed because "Patrick did not remove Omeish's hijab, did not participate in the removal of her hijab, did not order the removal of her hijab, and did not direct or control [Fairfax County Sheriff's Office] deputies who processed and took her photos." Dkt. 86 at 17. Officer Patrick also asserts that he should be protected by qualified immunity as to Omeish's First Amendment claims. In her brief response, Omeish argues that Summary Judgment should not be granted for Patrick because he was "an engaged participant in the processing and photographing of Ms.

8

Omeish while uncovered." Dkt. 101 at 19. Omeish has also formalistically argued that her "first amendment argument against Patrick tracks her RLUIPA argument against Kincaid." *Id.* at 19.

Omeish has not made any arguments that would rebut a finding that Officer Patrick is entitled to qualified immunity on the First Amendment claims. The only disputed action that Officer Patrick took which could rationally be tied to a violation would be that he remained present in the room when Omeish was photographed without her hijab and possibly viewed her while she was uncovered. It is undisputed that Officer Patrick was not the Fairfax County Sheriff's Office employee who either took the photograph or allegedly[4] removed Omeish's hijab. As discussed above, a police officer has qualified immunity when their actions were not clearly prohibited by existing legal precedent in accordance with decided Fourth Circuit, Supreme Court, Virginia Supreme Court law; or a general persuasive consensus on Constitutional law. *Ray*, 948 F.3d at 229. As Omeish has not addressed this qualified immunity argument or offered any legal precedent that would give Patrick notice that his presence in the room was a prohibited action.

In contrast, it appears that district courts that have addressed this issue have found that there is qualified immunity for individual police officers who engaged in the potentially more culpable activity of taking photographs and removing a hijab. *See Al-Kadi v. Ramsey Cty.*, 2019 U.S. Dist. LEXIS 98631 at *34 (D. Minn. June 12, 2019) (The district court found qualified immunity for individual defendants on free expression[5] claims for the removal of a hijab during a prison booking photo in front of male prison staff.); *Carter v. Myers*, 2017 U.S. Dist. LEXIS 130581 at *36 (D.S.C. July 5, 2017) (qualified immunity was found for officers who required a

---

[4] The Parties dispute whether Omeish removed the hijab herself or if it was forcefully removed by a Sheriff's Office employee. *See* Dkt. 91 at 4; Dkt. 86 at 5 ¶ 27.

[5] The district court did not find qualified immunity on the equal protection claims also raised by the plaintiff for distinct actions attributed to the same individual defendants in this district court case. *Al Kadi*, U.S. Dist. LEXIS 98631 at *38-39.

Muslim woman to remove a hijab and retained a photograph of her); *J.H. v. Bratton*, 248 F. Supp. 3d 401, 412-413 (E.D.N.Y. 2017) (A requirement that a female inmate without her hijab must be photographed outside the presence of male officers was not established at the relevant time); *Ibrahim v. Dep't of Homeland Sec.*, 2009 U.S. Dist. LEXIS 64619 at *34 (N.D. Cal. July 27, 2009) (temporary removal of a woman's hijab during a search could not support a First Amendment claim against an individual police officer).

Omeish has not directed the Court to any authority that would establish a legal precedent that Patrick's presence in the room while her hijab was removed would create a violation of her Constitutional rights. The Court is unaware of any legal authority for that proposition, and the relevant district court decisions which do exist indicate that qualified immunity is still appropriate for what might be considered far more egregious actions taken by individual police officers. There is no question that Omeish was sincerely distressed by Patrick's presence in the room while she was photographed, but that distress does not compel a finding that Patrick lacks qualified immunity. As there is no legal precedent that would inform Officer Patrick that he was potentially performing an act that would violate Omeish's First Amendment rights, Officer Patrick is entitled to qualified immunity. For this reason, the claims for violations of the First Amendment must be **DISMISSED**.

### RLUIPA claims against Sheriff Stacey Kincaid

The Court has previously ruled that Omeish can proceed on her RLUIPA claims against Sheriff Kincaid—in her official capacity—to obtain an injunction compelling the removal and destruction of the offending images. Dkt. 40 at 9. RLUIPA prohibits the imposition of a "substantial burden on the religious exercise" of an institutionalized person unless that burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means

of furthering that compelling governmental interest." 42 USC § 2000cc-1(a). If the Plaintiff has provided prima facie evidence to support a claim under this act, the government "shall bear the burden on any element of the claim." 42 USC §2000cc-2(b).

RLUIPA does not define the term "substantial burden." However, the Fourth Circuit has broadly defined a substantial burden as "one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). There is no genuine dispute that the retention of the photographs places a substantial burden on Omeish's sincerely held religious beliefs. This is because Omeish has asserted that wearing a hijab is central to her faith and that appearing in public or being photographed while not wearing the hijab is a "deeply humiliating and defiling experience in conflict with her sincerely-held religious beliefs." Dkt. 24 at 6. Although Sheriff Kincaid has not admitted that the photographs in question are available to the public, Sheriff Kincaid has not otherwise challenged these assertions. Dkt. 26 at 3 ¶¶ 23-24. Further, Congress has instructed that the district courts are to construe the provisions of RLUIPA "in favor of a broad protection of religious exercise." 42 USC §2000cc-3(g). For this reason, the Court finds there is no genuine dispute that the taking and retention of the photographs during Omeish's booking was an institutional act that violated a person's (who was under the control of a covered institution) sincerely held religious beliefs. *See Khabib v. County of Orange*, 639 F.3d 898, 907 (9th Cir. 2011) ("A Muslim woman who must appear before strange men she doesn't know, with her hair and neck uncovered in a violation of her religious beliefs, may feel shame and distress... A recognition of this very real harm helps inform our judgment on the scope of covered institutions.")

The Court must consider whether it has jurisdiction over the current civil action because Omeish is no longer in custody of the Fairfax County Sheriff's Office and is unlikely to be

rearrested. *See Incumaa v. Ozmint*, 507 F.3d 281, 286-287 (4th Cir. 2007) (Challenges to policies often become moot after a person is no longer in custody of the institution with the challenged policy). However, another district court that has looked at virtually identical factual circumstance to this case has found that a brief detention does not automatically render a RLUIPA claim moot. *Maragha v. City of Chi.*, 2021 U.S. Dist. LEXIS 166901 at *7 (N.D. Ill. September 2, 2021) (deletion of photographs of an uncovered Muslim woman could be appropriate injunctive relief based on the factual development of that record). Upon the record before the Court, there is no genuine dispute that there is a continuing substantial burden on Omeish's observance of her faith. The Court finds it very realistic that Omeish's pictures could still be available to, or viewed by, either members of the public or the custodians of those photographs.[6] There is no genuine dispute that if anyone were to view these pictures, there would be a serious violation of Omeish's sincerely held religious beliefs. Therefore, there is a "live" controversy in which Omeish has a "legally cognizable interest." *Incumaa*, 507 F.3d at 286 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Further, the injury of which Omeish complains would be redressed by a narrowly tailored injunction issued by this Court. *Id.* at 287 (a plaintiff's case would be moot if the relief sought "would not redress in any way the injury he originally asserted."); *see also Elliot v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986) ("expungement of personnel records, is clearly prospective.") There is no genuine dispute that there is a live controversy that can be addressed by an equitable remedy, therefore, Omeish has proper standing to bring her civil action in this Article III Court.

---

[6] Sheriff Kincaid represented at oral arguments that because the photographs were requested under the Freedom of Information Act ("FOIA"), they must be held for three years in accordance with Virginia law. *See* Dkt. 96-1. During oral argument, Omeish has represented that those photographs could be requested in a subsequent FOIA request, making them available to the public. At the hearing, Omeish has stated that she waives any rights to object to or remedies for the destruction of any photographs retained pursuant to the provisions of the Virginia FOIA statute.

Based on the burden shifting provision of RLUIPA, Sheriff Kincaid must produce evidence at Summary Judgment that demonstrates a genuine dispute to the material fact that the retention of the uncovered photographs is the least restrictive means of furthering a compelling government interest. *Lovelace*, 472 F.3d at 185-186. For the following reasons, Sheriff Kincaid has not met that burden on Summary Judgment.

Sheriff Kincaid argues that there is a compelling government interest in retaining the disputed photographs to serve "identification purposes." Dkt. 96 at 15. Although the Court gives due deference to the experience and insight of the Sheriff's office, the unsupported assertion of a compelling interest is not, on its own, sufficient to satisfy the requirements of RLUIPA. *Couch v. Jabe*, 679 F.3d 197, 201 (4th Cir. 2021) (collecting cases). The Sheriffs Office's own designated witness admitted that it is possible to identify someone using fingerprints and a photograph that does not show their ears and hair. Dkt. 91-3 at 111. Further, Sheriff Kincaid has pointed to no facts in the record that would support the argument that the retention of the fully uncovered photo of Omeish is the least restrictive means of furthering a compelling interest even when all inferences are made in Sheriff Kincaid's favor. *See Jehovah v. Clarke*, 798 F.3d 169, 176-177 (4th Cir. 2015) ("The least-restrictive means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party.") (quoting *Holt v. Hobbs*, 574 U.S. 352, 365 (2015)); *Browning v. Seifert*, 2015 U.S. Dist. LEXIS 35079 at *43 (N.D.W. Va. March 20, 2015) ("Furthermore, the defendants have failed to point to any proposed accommodations they have offered to Browning, which leads to an inference that they have failed to explore any less restrictive alternatives.").

Any contention that a photograph without a hijab is necessary for identification purposes is also severely undercut by Omeish's argument that other jurisdictions have met the same compelling interest with less restrictive procedures. *See* Dkt. 91 at 10; Dkt. 91-5 (NYPD draft interim order on religious head coverings); Dkt. 91-6 (Yonkers PD Policy on religious head coverings); *Al-Kadi v. Ramsey Cty.*, 2019 U.S. Dist. LEXIS 98631 at *30 (D. Minn. June 12, 2019) ("Indeed, Al-Kadi notes that photos of women wearing hijabs are often used for important government identification purposes, including U.S. passports and Minnesota driver's licenses."); *Schlussel v. Dearborn Heights*, 2017 U.S. Dist. LEXIS 167806 at *14 (E.D. Mich. October 11, 2017) (discussing how the policy of not removing a hijab for booking photos was instituted to comply with RLUIPA); *G.E. v. City of New York*, 2017 U.S. Dist. LEXIS 161905 at *13 (The City of New York changed its policy to accommodate religious head coverings prior to that district court's summary judgment order). The Supreme Court, the Fourth Circuit, and other district courts have also evaluated an institution's challenged restrictions in light of policies at other comparable facilities. *See Holt*, 574 U.S. at 368 (other prisons allowing Muslim inmates to grow beards was indicative that a prohibition on Muslims growing beards in an Arkansas prison was not the least restrictive means of achieving a government interest) (citing *Procunier v. Martinez*, 416 U.S. 396, 414 n. 14 (1974) ("while not necessarily controlling, the policies followed at other well-run institutions would be relevant to a determination of the need for a particular type of restriction.")); *Lovelace*, 472 F.3d at 190[7] ("Given the superficial nature of the

---

[7] Like the summary judgment record in *Lovelace*, there is no sworn statement from any official that "discusses any security, safety, or cost consideration that justifies the restrictions" in the challenged policy that requires retention of the photographs. 472 F.3d at 191. The Sheriff Office's designated witness has only stated that "reducing the availability of facial features and the entire face could reduce the ability to identify someone," but the witness does not explain why the challenged policy is the least restrictive means necessary to accomplish this identification. Dkt. 91-3 at 58. When directly asked how a religious head covering interfered with this interest in identification

defendants' explanation, we cannot at this stage conclude that the asserted interest is compelling as a matter of law."); *Taylor v. Nelson*, 2020 U.S. Dist. LEXIS 224222 at *20 (W.D. Tex. March 20, 2015) ("In fact, the undisputed summary judgment evidence shows that TDCJ affords every Muslim female offender the opportunity to wear a hijab at all times.")

Sheriff Kincaid has argued that the authority relied on by Omeish and other district courts is not material because those decisions and policies deal with the procedure for taking a photograph rather than the retention of the photograph. Dkt. 96 at 15. This argument is unpersuasive. Omeish has detailed in the record the limited occasions when an uncovered photograph would be justified. *See e.g* Dkt. 91-1 at 2 (uncovered photographs are only taken when "there is a reasonable suspicion that the prisoner has a distinguishing feature not otherwise visible that is of investigative value to the current arrest or investigation.") These policies show that reasonable accommodations can be made, and exceedingly simple procedures implemented, that would not create the offending photograph and still serve the asserted government interest. Indeed, these procedures indicate that the retention of an offending photograph is not necessary in those jurisdictions *unless* there was a compelling government interest for that uncovered photograph. Therefore, the Court does find that the existence of other procedures is material to Summary Judgement because those procedures demonstrate that there is a less restrictive means to meet the government's interest in identification than utilizing a photograph of an uncovered Muslim detainee.

Further, the factual circumstances of this case are also distinct from *Holt*, where the department of corrections argued that photographs of Muslim men with shaven beards would be necessary to identify prisoners who were incarcerated. 574 U.S. at 366. The holding in *Holt* does

---

the witness only referred to an operating procedure and avoided the question. Dkt. 91-3 at 69.

not necessarily compel the Court to find that the Sheriff's Office has the same compelling interest in the identification of Omeish. It is obvious that a beard covers identifying facial features that Omeish's hijab does not. Further, Omeish is not incarcerated, so the need to identify her in the future does not raise the same security concerns that the Supreme Court considered in *Holt*. Based on these factual differences, the Court does not find that *Holt* inherently demands a certain disposition of the instant civil action.

Most prior decisions on comparable RLUIPA claims involve the denial of summary judgment for movants who are defendants to those claims. These cases, upon which this Court relies, do not directly stand for the proposition that injunctive relief should be awarded to a plaintiff on summary judgment. However, Federal Rule of Civil Procedure 56(e)(3) allows the court to grant summary judgment "if a party fails to properly support an assertion of fact" and the "supporting materials shows… the movant is entitled to it." Sheriff Kincaid has not addressed whether there is a less restrictive means to accomplish the Government interest, and as such has not established that there is a genuine dispute on this issue. Based on the record before the Court in this case, the Court can decide the RLUIPA claim at the Summary Judgment stage.

Due to the weight of persuasive authority and the paucity of Sheriff Kincaid's factual support, no factfinder could hold that there is a compelling interest that would not be served by the less restrictive retention of a photograph of Omeish wearing a hijab. As Sheriff Kincaid has pointed to no evidence that using a photograph of Omeish covered with a hijab could not be used for the asserted identification purposes, there is no genuine dispute to this element of the RLUIPA claim. Because it is the Defendant's burden to prove this element, Sheriff Kincaid cannot prevail on Summary Judgment when she has produced no evidence in the record—beyond *ipse dixit* assertions of a compelling interest—that would support a verdict in her favor.

16

The Court does not hold that the retention of every photograph of a Muslim woman without a hijab would be *per se* a violation of RLUIPA in every circumstance. However, based on the particular factual record of this specific case, Omeish has persuaded the Court that there is no compelling government interest in the retention of her uncovered photograph. For this reason, Summary Judgment is **GRANTED** for the Plaintiff and Omeish will be awarded the narrow injunctive relief she seeks.

**Conclusion**

The Defendant, J. Patrick's Motion *in limine* is **GRANTED** for the reasons stated from the bench. Dkt. 93. The Defendant J. Patrick's Motion for Summary Judgment is **GRANTED** and all claims are to be **DISMISSED** against J. Patrick. Dkt. 85. Omeish's Motion for Summary Judgment is **GRANTED**. Dkt. 90. The Court will enter a separate Order detailing the nature of the injunctive relief.

It is so **ORDERED**.

July 22, 2022
Alexandria, Virginia

Liam O'Grady
United States District Judge